TOWN OF FAIRFIELD ET AL. *v.* CONNECTICUT SITING COUNCIL ET AL.
(13094)

DUPONT, C. J., and LAVERY and HEIMAN, Js.

Argued October 25, 1994—decision released April 25, 1995

*Linda M. Guliuzza,* for the appellants (plaintiff Alliance to Limit Electromagnetic Radiation Today et al.).

*Mark F. Kohler,* assistant attorney general, with whom, on the brief was *Richard Blumenthal,* attorney general, for the appellee (named defendant).

*Anthony M. Fitzgerald,* for the appellee (defendant Connecticut Light and Power Company et al.).

LAVERY, J. The plaintiffs appealed to the trial court from the defendant Connecticut Siting Council's (council) denial of their requests for a reversal or modification under General Statutes § 4-181a (b) of the council's certification of environmental compatibility and public need for the construction of an electric transmis-

sion line. The council denied that request because it found no changed conditions. The trial court granted the defendants' motions to dismiss and the plaintiffs[1] appealed to this court.

The plaintiffs claim that the trial court incorrectly concluded that the council's decision was not a final decision under the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189, and that the plaintiffs' requests were petitions for reconsideration. We agree with the plaintiffs and reverse the judgment of the trial court.

The pertinent facts are as follows. In January, 1991, the defendants Connecticut Light and Power Company and United Illuminating Company (utilities) applied to the defendant council for a certificate of environmental compatibility and public need (certificate) for the construction of an electric transmission line that would be 15.3 miles in length and extend from Bridgeport to Norwalk within an existing railroad right-of-way. The application was served on all appropriate local and state officials and the hearing date was noticed in the local newspapers. A six hour contested hearing was held in the Westport town hall on April 29, 1991. On September 18, 1991, the council approved the application pursuant to General Statutes § 16-50k and limited conditions of construction and operation of the proposed transmission line. No appeal was taken from this decision. The utilities have already completed a substantial portion of the project in reliance on the certificate granted by the council.

---

[1] The appeal to this court was filed by the plaintiffs Alliance to Limit Electromagnetic Radiation Today, Anne Graney, Jennifer Lindinc, Santo Piro, Christine S. Piro, Stephen Stout and David S. Parker. The town of Fairfield did not appeal. As used in this opinion, the term plaintiffs refers to the appealing plaintiffs only.

Subsequent to September 18, 1991, and prior to May 6, 1993, numerous motions and requests seeking to open the granting of the certificate and concerning stop work orders and investigations into alternatives to the proposed construction were submitted to the council. Without holding a hearing, the council denied the motions and requests in a written decision dated May 6, 1993.

The council found that "the subject matter of all motions, requests, and contentions to reevaluate this case and reinvestigate issues, has already been carefully considered by the Council in deciding this application . . . on September 18, 1991. No one has introduced new information or facts that were not available at that time.

"Because of a legal expectation of finality of a decision, we must find a compelling reason to reverse our decision or reopen this proceeding. After considering each and every motion, request and contention, we find no such compelling reason."

Subsequent to the May 6, 1993 decision, new motions for modification under General Statutes § 4-181a (b) were filed with the council. These motions claimed that changed conditions, new information, and new technology have occurred since the council's September 18, 1991 decision.

On June 29, 1993, the council announced that it would conduct public hearings on July 13, 1993, on the motions to open and reconsider the construction of the facility. Prior to the hearing, the council solicited written comments and consultation from the state departments of environmental protection, health services, public utility control, economic development and transportation, and the state council on environmental quality and the state office of policy and management. The hearing on July 13, 1993, was limited to the taking of oral statements from the public and parties. The council

permitted the submission of evidence and briefs, which were to be filed at the council's office on or before July 20, 1993. On July 30, 1993, the council issued a written opinion.

It stated in part: "In deciding these motions and requests to reopen, we acted under General Statutes § 4-181a (b) which allows us to reverse or modify a final decision on a showing of changed conditions. . . . In conclusion, we find that the subject matter of all motions, requests, and contentions to re-evaluate this case and reinvestigate issues, has already been carefully considered by the Council in deciding this application two years ago, on September 18, 1991. We know of no new information or facts that were not available at that time that would compel us to reopen this case. We have not identified any unknown or unforeseen events or any relevant circumstances that would compel us to reopen this case. There have been no scientific or technological breakthroughs that would have altered our analysis. Our analysis remains valid today and consistent with State law and State policy, including policy from the State Department of Public Health and Addiction Services and the Department of Environmental Protection.

"Because of a legal expectation of finality of a decision, we must find a showing of changed conditions or a compelling reason to reopen this proceeding. After considering each and every motion, request, and contention, we find no such changed conditions or compelling reasons."

Commissioner Paulann H. Sheets filed a six page dissenting opinion concluding that there were changed conditions and that a rehearing should take place. That rehearing she felt should reexamine the decision in light of the changed conditions and modify it appropriately if the evidence warranted.

From the July 30 decision, the town of Fairfield, the Alliance to Limit Electromagnetic Radiation Today (A.L.E.R.T.), Anne Graney, Santo Piro, Christine S. Piro, Jennifer Lindine, Stephen Stout and David S. Parker appealed to the Superior Court alleging that the council, "[i]n denying the motions for revocation, reconsideration, amendment and/or modification, acted illegally, arbitrarily and in abuse of the discretion vested in it in that: a. its decision is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; b. it failed to adequately notice the public hearing held July 13, 1993, in violation of the federal and state constitutions and state statutory provisions; c. it failed to employ the procedures for contested cases, in violation of General Statutes § 4-181a (b); d. it considered the effect of 'changed conditions' in the absence of a full evidentiary hearing; e. it relied, in error, upon the comments of the department of public health and addiction services in rendering its decision; f. it failed to consider the project's effects upon historic resources, aesthetics, the environment, property values and health; and g. it erred in denying party status to the plaintiffs, A.L.E.R.T., David S. Parker and Town of Fairfield, in violation of State Statutory provisions."

The council and the utilities then each filed a motion to dismiss. Each motion was based on the trial court's lack of jurisdiction. The trial court granted each motion ruling that, in a hearing held under § 4-181a (b), there is no automatic right to an appeal and that, even though the council had held a hearing, it had not been required to do so under the statute and could have denied the motions without one. It further found that since no hearing was required by the statute, denial of the motions did not create the right to appeal and cited *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 629 A.2d 367 (1993).

The trial court further found that motions for reconsideration, reversal or modification of any final decision are governed by the requirements for contested cases. General Statutes § 4-181a (b). The agency's consideration of the motions was not a "contested case" under § 4-166 (2) and, since no hearing was required, it was not an "agency determination in a contested case" and not a "final decision" under § 4-166 (3). As previously stated, the definition of "final decision" includes "an agency *decision* made after reconsideration." (Emphasis added.) The ruling of an agency granting or denying a petition for reconsideration is, however, expressly excluded from the definition of "final decision" in § 4-166 (3).

We do not decide whether the plaintiffs' appeal has any merit but only whether the plaintiffs' have a right to have their appeal heard.

This case is governed by the UAPA and more specifically § 4-181a (b), which allows an agency to modify or reverse a prior final decision of a contested case on a showing of changed conditions. This appeal is the first time this section has come before any appellate court for review. Although there was no prior statutory authority in the UAPA similar to this section, prior case law had recognized changed conditions as a ground for altering an administrative decision. *Shea* v. *State Employees Retirement Commission*, 170 Conn. 610, 368 A.2d 159 (1976).

General Statutes § 4-181a (b) provides: "On a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion. The procedure set forth in this chapter for contested cases shall be applicable to any proceeding in which such reversal or modification of any final decision is to be considered. The party or parties who were the subject of the origi-

nal final decision, or their successors, if known, and intervenors in the original contested case, shall be notified of the proceeding and shall be given the opportunity to participate in the proceeding. Any decision to reverse or modify a final decision shall make provision for the rights or privileges of any person who has been shown to have relied on such final decision."

The plaintiffs contend that the trial court improperly concluded that the council's decision was not a final decision under the UAPA. Judicial review of an administrative decision is a creature of statute. *Tarnopol* v. *Connecticut Siting Council*, 212 Conn. 157, 163, 561 A.2d 931 (1989). Section 4-183 (a) of the UAPA provides in relevant part: "A person . . . who is aggrieved by a final decision may appeal to the superior court as provided in this section. . . ." In General Statutes § 4-166 (3), a final decision is defined as "(A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include . . . a ruling of an agency granting or denying a petition for reconsideration . . . ."

In General Statutes § 4-166 (2), a contested case is defined as "a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section  4-176 or hearings referred to in section 4-168 . . . ."

Relying on *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 792, the trial court concluded that this is not a contested case and, therefore, the council's decision was

not a final decision under the UAPA. In *Summit Hydropower*, the plaintiff filed an application with the Federal Energy Regulatory Commission for a license to construct a hydroelectric facility. In accordance with federal regulations, the plaintiff filed a copy of the application with the water management bureau of the Connecticut department of environmental protection, seeking certification indicating that the proposed project was in compliance with state and federal water quality standards. Such state certification is required prior to the issuance of a license by the Federal Energy Regulatory Commission. Id., 796. The commissioner of environmental protection denied the plaintiff's request for certification.

The plaintiff appealed the denial to the Superior Court, which sustained the appeal. The defendants appealed from that decision, and our Supreme Court reversed the trial court's judgment. Id., 799.

The Supreme Court agreed with the defendant that the proceedings before the agency did not constitute a contested case and the court did not have subject matter jurisdiction over the appeal. That court relied on *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984), in stating that " '[t]he test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is *statutorily* required to be determined by the agency, (3) through an opportunity for hearing or in which a hearing is in fact held.' " (Emphasis in original.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 800–801; see *Fraenza* v. *Keeney*, 232 Conn. 401, 655 A.2d 1112 (1995), adopting 43 Conn. Sup. 386, 655 A.2d 1113 (1994).

The court noted that, to ascertain whether a statute requires an agency to determine the legal rights or privileges of a party in a hearing, it is necessary to examine the statutory provisions governing the activities of the agency. *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection,* supra, 226 Conn. 802–803. The court proceeded to review the relevant statutory provisions and concluded that they did not require the commissioner of environmental protection to determine the plaintiff's rights in a hearing. Id., 804.

This case differs substantially from *Summit Hydropower*. There is no dispute that the granting of the certificate on September 18, 1991, was a final decision of a contested case from which an appeal could have been taken under the UAPA. General Statutes § 16-50q. The authority for the council to modify or reverse the prior decision on the basis of changed conditions does not come from chapter 277a, which sets forth the duties and powers of the council, but rather from the UAPA § 4-181a (b). General Statutes § 16-50*l* (d)[2] provides for a proceeding to amend a

_____

[2] General Statutes § 16-50*l* (d) provides: "An amendment proceeding may be initiated by an application for amendment of a certificate filed with the council by the holder of the certificate or by a resolution of the council. An amendment application by a certificate holder shall be in such form and contain such information as the council shall prescribe. A resolution for amendment by the council shall identify the design, location or route of the portion of a certificated facility described in subdivisions (1) or (2) of subsection (a) of section 16-50i which is subject to modification on the basis of stated conditions or events which could not reasonably have been known or foreseen prior to the issuance of the certificate. No such resolution for amendment of a certificate shall be adopted after the commencement of site preparation or construction of the certificated facility or, in the case of a facility for which approval by the council of a right-of-way development and management plan or other detailed construction plan is a condition of the certificate, after approval of that part of the plan which includes the portion of the facility proposed for modification. A copy and notice of each amendment application shall be given by the holder of the certificate in the manner set forth in subsection (b) of this section. A copy and notice of each resolution for amendment shall be given by the council in the manner set forth in subsection (b) of this section. The council shall also provide the certificate holder with a copy of such resolution. The certificate holder

certificate, but it may be initiated only by the certificate holder or the council. A public hearing is required under General Statutes § 16-50m[3] on an application

and the council shall not be required to give such copy and notice to municipalities and the commissions and agencies of such municipalities other than those in which the modified portion of the facility would be located."

[3] General Statutes § 16-50m provides: "(a) Upon the receipt of an application for a certificate complying with section 16-50$l$, the council shall promptly fix a commencement date and location for a public hearing thereon not less than thirty days nor more than one hundred fifty days after such receipt. At least one session of such hearing shall be held at a location selected by the council in the county in which the facility or any part thereof is to be located after six-thirty p.m. for the convenience of the general public. After holding at least one hearing session in the county in which the facility or any part thereof is to be located, the council may, in its discretion, hold additional hearing sessions at other locations. If the proposed facility is to be located in more than one county, the council shall fix the location for at least one public hearing session in whichever county it determines is most appropriate, provided the council may hold hearing sessions in more than one county.

"(b) (1) The council shall hold a hearing on an application for an amendment of a certificate not less than thirty days nor more than sixty days after receipt of the application in the same manner as a hearing is held on an application for a certificate if, in the opinion of the council, the change to be authorized in the facility would result in any material increase in any environmental impact of such facility or would result in a substantial change in the location of all or a portion of the facility, other than as provided in the alternatives set forth in the original application for the certificate, provided the council may, in its discretion, return without prejudice an application for an amendment of a certificate to the applicant with a statement of the reasons for such return. (2) The council may hold a hearing on a resolution for amendment of a certificate not less than thirty days nor more than sixty days after adoption of the resolution in the same manner as provided in subsection (a) of this section. The council shall hold a hearing if a request for a hearing is received from the certificate holder or from a person entitled to be a party to the proceedings within twenty days after publication of notice of the resolution. Such hearing shall be held not less than thirty days nor more than sixty days after the receipt of such request in the same manner as provided in subsection (a) of this section. (3) The county in which the facility is deemed to be located for purposes of a hearing under this subsection shall be the county in which the portion of the facility proposed for modification is located.

"(c) The council shall cause notices of the date and location of each hearing to be mailed, within one week of the fixing of the date and location,

for amendment of the certificate. In addition, § 16-50q provides for judicial review on an order issued on an amendment to a certificate.

The provisions of § 4-181a (b) apply not only to the council but to all state agencies' final decisions. This section gives an agency broad discretion to reverse or modify a final decision, at any time, on a showing of changed conditions. This may be done either by the motion of the agency or by the request of any person.

Our analysis of the plaintiffs' claim is guided by well established principles of statutory construction. " ' "Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." ' " *Gonsalves* v. *West Haven*, 232 Conn. 17, 21, 653 A.2d 156 (1995).

General Statutes § 4-166 (9) defines person as "any individual, partnership, corporation, association, governmental subdivision, agency or public or private organization of any character, but does not include the agency conducting the proceeding . . . ." The plaintiffs come within the statutory definition of person.

On May 6, 1993, the council denied prior requests of the plaintiffs and others by written notice without a

to the applicant and each person entitled under section 16-50*l* to receive a copy of the application or resolution. The general notice to the public shall be published in not less than ten point, boldface type.

"(d) Hearings, including general hearings on issues which may be common to more than one application, may be held before a majority of the members of the council.

"(e) During any hearing on an application or resolution held pursuant to this section, the council may take notice of any facts found at a general hearing."

hearing. Subsequent to the May 6, 1993 notice, the plaintiffs filed new motions to the council claiming changed conditions, new information, new technology, and technological breakthroughs that had occurred since September 18, 1991. The council announced that it would conduct a public hearing on the motions to open and reconsider the construction of the facility.

This hearing became the proceeding contemplated in § 4-181a (b). Since the UAPA does not define proceeding, "the term must be construed according to the commonly approved usage of the language." *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981). "Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981). Bouvier's Law Dictionary defines proceeding as "the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them of opposing judgments and of executing." In *State* v. *Ventola,* 4 Conn. Sup. 161, 162 (1936), the court stated that "the word 'proceeding' is as broad a word as may be used. An examination of the derivation of the word indicates that it is anything that may move forward; and so this word has been applied to business and affairs of many kinds." In this case, the hearing on July 13, was a proceeding as contemplated by the statute. The hearing was noticed, as was the original hearing, in the Hartford Courant, Connecticut Post, Fairfield Citizen News, Norwalk Hour and the Westport News. Memoranda were sent from the council to the departments of environmental protection, health services, public utility control, economic development and transportation, and to the council on environmental quality and the office of policy and management soliciting written comments and consultation on the motion to open. All parties and intervenors to the original hearings were notified.

The defendants' arguments that the council did not consider reversal or modification are without merit. In its decision, the council stated: "On July 30, 1993 the Connecticut Siting Council . . . considered motions and requests to reopen, stop work, reconsider, revoke or amend the Certificate, and to modify the construction of this 115kv transmission line facility." It further stated in the opinion of July 30, 1993, that "[e]ven if we were to reopen this proceeding at this time, such a reopening would not be productive because there is no new scientific or technical information that would help to resolve this global issue." At the opening of the hearing, the chairman said on page four of the transcript, "At this hearing, the Council will receive testimony on the technical and legal reasons to reopen this proceeding. The chairman announced at the end of the hearing that all evidence must be filed with the Council no later than July 20, 1993 and that all state agencies desiring to submit additional comments do so by the same date."

Pursuant to the statute all the parties and intervenors to the "original contested case" were notified of the proceeding and were given the opportunity to participate in the proceeding.

Because of the vested rights of the utilities, the issue of "changed conditions" must be subject to the adversarial proceeding of a contested hearing. Section 4-181a (b) represents a departure from case law that existed prior to its enactment because it allows an agency, to a certain extent, to reverse or modify a decision at any time. Under prior case law, an agency had the power to reverse its decision only if no vested rights had arisen. *Shea* v. *State Employees' Retirement Commission*, 170 Conn. 610, 615–16, 368 A.2d 159 (1976); *St. Patrick's Church Corp.* v. *Daniels*, 113 Conn. 132, 138, 154 A. 343 (1931).

To reverse or modify there must be a "showing of changed condition." Showing is defined in Webster's Third New International Dictionary as "an act of putting something on view." It is clear from the plain language of § 4-181a (b) that the hearing held was subject to the "contested case" provision of the UAPA. Our conclusion is substantiated by an article in the Connecticut Bar Journal by Joseph C. Lee, an attorney who was an advisor to the law revision commission, which recommended this section to the legislature. "An agency enjoys broad discretion to reverse or modify a final decision, at any time, on a showing of changed conditions. Such action may be taken in response to an agency's own motion or the request of any person. Procedurally, the agency is bound to notify all parties who were the subject of the original order or their successors, if known, and all intervenors in the original contested case, to give them the opportunity to participate in the proceeding. The proceeding itself must be conducted in accordance with the contested case provisions. Furthermore, an agency is bound to consider the interests of any person who has been shown to have relied on a final decision being reversed or modified." J. Lee, "Administrative Law in Connecticut—An Overview of the Administrative Procedure Act," 64 Conn. B.J. S.I. 259, 271 (1990).

The plaintiffs' appeal alleges that they were not afforded a hearing in accord with the UAPA procedures for contested cases and that the council considered the effect of changed conditions in the absence of a full evidentiary hearing.

In § 4-166 (2) a contested case is defined in part as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for a hearing . . . ."

Among the allegations in the appeal is the denial of party status to A.L.E.R.T., David S. Parker and the town of Fairfield in violation of General Statutes § 4-177a (a), the failure to give adequate notice in violation of statutory provisions (General Statutes § 4-177 has specific notice requirements in contested cases), the failure to have a full evidentiary hearing (General Statutes §§ 4-177b, 4-177c and 4-178 cover conduct of hearings under contested cases), and the general failure to employ the procedures for contested cases as required by § 4-181a (b).

The statute clearly allows a final decision from a contested case to be opened and modified upon a showing of changed conditions. It is clear that once the agency initiates a proceeding, it must conform to the contested case provisions because it not only protects the person alleging the changes and seeking modification but it gives to those who have vested rights all the due process procedures of the contested case provisions to contest the allegation of changed conditions and to protect what they received in the original final decision from being modified or reversed. The right of appeal from a proceeding under § 4-181a (b) protects not only the persons petitioning the modification or reversal of the prior decision but those that have vested rights from the prior decision.

We agree with the plaintiffs' second claim that a proceeding under § 4-181a (b) is not excluded from the definition of "final decision" in § 4-166 (3).[4]

---

[4] General Statutes § 4-166 (3) provides: " 'Final decision' means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration . . . ."

Petitions for reconsideration under the UAPA are governed by § 4-181a (a).[5] This section permits a party in a contested case to file a petition for reconsideration within fifteen days of delivery or mailing of the final decision. Unlike requests made pursuant to § 4-181 (b), petitions for reconsideration may not be made "at any time" or "at the request of any person." None of the plaintiffs was a part in the original contested case decided in 1991. A petition for reconsideration does not stay the time to appeal under General Statutes § 4-183 (c) from the final decision of the original contested case. *Cassella* v. *Dept. of Liquor Control,* 30 Conn. App. 738, 622 A.2d 1018, cert. denied, 226 Conn. 909, 628 A.2d 983 (1993).

In *Cassella,* we stated: "The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it. *Ierardi* v. *Commission on Human Rights & Opportunities,* 15 Conn. App. 569, 574, 546 A.2d 870, cert. denied, 209 Conn. 813, 550 A.2d 1082 (1988)." (Internal quotation marks omitted.) *Cassella* v. *Dept. of Liquor Control,* supra, 30 Conn.

---

[5] General Statutes § 4-181a (a) provides: "(1) Unless otherwise provided by law, a party in a contested case may, within fifteen days after the personal delivery or mailing of the final decision, file with the agency a petition for reconsideration of the decision on the ground that: (A) An error of fact or law should be corrected; (B) new evidence has been discovered which materially affects the merits of the case and which for good reasons was not presented in the agency proceeding; or (C) other good cause for reconsideration has been shown. Within twenty-five days of the filing of the petition, the agency shall decide whether to reconsider the final decision. The failure of the agency to make that determination within twenty-five days of such filing shall constitute a denial of the petition. (2) Within forty days of the personal delivery or mailing of the final decision, the agency, regardless of whether a petition for reconsideration has been filed, may decide to reconsider the final decision. (3) If the agency decides to reconsider a final decision, pursuant to subdivision (1) or (2) of this subsection, the agency shall proceed in a reasonable time to conduct such additional proceedings as may be necessary to render a decision modifying, affirming, or reversing the final decision."

App. 740. The procedure for appeals from administrative agency decisions pursuant to § 4-183 have been substantially changed over the past four years. Prior to 1988, a request for reconsideration under General Statutes (Rev. to 1987) § 4-183 (b), "postpone[d] the running of the appeal period . . . until the decision thereon . . . so long as the request is filed with the agency within the period for the commencement of an administrative appeal by service upon the proper parties thereto." (Citations omitted; internal quotation marks omitted.) *Ierardi* v. *Commission on Human Rights & Opportunities,* supra, 575.

In 1989, the UAPA underwent major revisions. Among those were the procedures for the appeal of an administrative agency decision pursuant to § 4-183 (c). These revisions removed the tolling of the appeal period by the filing of a petition for reconsideration with the agency. The legislative history of the revisions as contained in the report and recommendations of the law revision commission states that "[a] petition for reconsideration is not a prerequisite for seeking judicial review (section 24) *and does not stay the time to appeal."* (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 384.

The best explanation of the revision of the UAPA with reference to the creation of § 4-181a (a), (b) and (c) comes from the report of the Connecticut law revision commission to the Connecticut General Assembly entitled "Report and Recommendation of the Law Revision Commission concerning the Uniform Administrative Procedures Act," Senate Bill 209, February 1988.

"Section 22. (NEW). CONTESTED CASE: RECONSIDERATION AND MODIFICATION OF FINAL DECISION. Under section 4-183 (b), the UAPA currently mentions reconsideration of a final decision only in context of deter-

mining the time for seeking judicial review. Under section 4-183 (e), the UAPA currently addresses agency modification of its decision only if an agency is considering additional evidence at the direction of a court on appeal. The act permits easier applications of these procedures by setting detailed standards for reconsideration of final decisions and by allowing modification of a decision in two new circumstances.

"Subsection (a) of the act permits reconsideration of a final decision to correct a problem discovered within fifteen days of the mailing or delivery of the decision. After receiving a timely petition for reconsideration, the agency uses a two-step process. The agency has twenty-five days after the filing of a petition to decide whether to reconsider the final decision. If the agency decides to reconsider, it then has a reasonable time to issue a new final decision affirming, modifying or reversing the original final decision.

"A petition for reconsideration is not a prerequisite for seeking judicial review (section 24) and does not stay the time to appeal. If, however, the reconsideration petition is granted, the agency's subsequent action affirming, modifying, or reversing the final decision is, under section $l$ (3), a new final decision to which a new appeal period applies.

"If, at some later date, conditions change, subsection (b) permits modification of the decision at that time. Any such modification, must, of course, adequately consider the rights of persons who have acted in reliance on the original final decision. Subsection (c) permits an agency to make clerical corrections in the final decision."

The judgment is reversed and the case is remanded with direction to deny the defendants' motions to dismiss and for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.