MELODY HYLLEN-DAVEY ET AL. *v.* PLAN AND ZONING COMMISSION OF THE TOWN OF GLASTONBURY ET AL.
(AC 18855)

Lavery, Mihalakos and Stoughton, Js.[1]

Argued December 13, 1999—officially released May 9, 2000

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Derek V. Oatis*, for the appellants (plaintiffs).

*David F. Sherwood*, for the appellee (defendant Zella D. Ferrando).

*Opinion*

LAVERY, J. The plaintiffs[2] appeal from the trial court's judgment dismissing on motions by the defendants[3] an administrative appeal from the decision by the defendant plan and zoning commission of the town of Glastonbury (commission) that approved a subdivision application. The plaintiffs contend that the court improperly (1) concluded that General Statutes § 22a-19[4] does not provide an independent right of appeal to a nonparty who did not intervene during the underlying

---

[2] The plaintiffs are Melody Hyllen-Davey, Animal Welfare and Rights Entity, Inc., and Animal Rights Front, Inc.

[3] The defendants are the plan and zoning commission of the town of Glastonbury, Zella D. Ferrando and Rejean Jacques doing business as Rejean Realty, Inc.

[4] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

administrative hearing where no parties to the hearing appealed and (2) denied the plaintiffs' motion for a continuance. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The defendant Zella D. Ferrando is the owner of approximately ninety-seven acres of land in Glastonbury. In March, 1998, the defendant Rejean Jacques, doing business as Rejean Realty, Inc., applied to the commission for a special permit to subdivide land for development. In April, 1998, the commission approved the application.

In May, 1998, the plaintiffs, who had not intervened in the action before the commission, appealed from the commission's decision to the Superior Court. The defendants filed motions to dismiss the appeal, and a hearing date was set. The plaintiffs opposed the motions and filed a motion for a continuance to give them time to obtain a written record from the commission. The court denied the motion for a continuance.

On July 10, 1998, after conducting a hearing, the court granted the motions to dismiss on the ground that the plaintiffs lacked standing to initiate an appeal because they had not intervened in the proceeding before the commission as required by § 22a-19. On September 9, 1998, we granted the plaintiffs' petition for certification to appeal to this court. On September 25, 1998, the plaintiffs filed this appeal.

I

The primary issue before us is whether the Environmental Protection Act of 1971 (EPA), General Statutes § 22a-14 et seq., gives standing to a nonparty in an administrative agency proceeding to initiate an appeal from that agency's decision when no party to the agency proceeding has done so. We answer this question in the negative and affirm the judgment of the trial court.

" 'The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.' *Pamela B.* v. *Ment,* 244 Conn. 296, 308, 709 A.2d 1089 (1998). A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiffs'] claim.' . . . *Johnson* v. *Dept. of Public Health,* 48 Conn. App. 102, 107–108, 710 A.2d 176 (1998). 'We first note that, because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary.' . . . *Lawrence Brunoli, Inc.* v. *Branford,* 247 Conn. 407, 410, 722 A.2d 271 (1999)." *Taft* v. *Wheelabrator Putnam, Inc.,* 55 Conn. App. 359, 362, 742 A.2d 366 (1999), cert. granted on other grounds, 252 Conn. 918, 919, 744 A.2d 439, 440 (2000).

Before the enactment of the EPA, citizens seeking to protect the environment had to show specific, personal aggrievement to attain standing to bring a legal action. See *Sheridan* v. *Planning Board,* 159 Conn. 1, 13, 266 A.2d 396 (1969). Citizens concerned about the environment were seen as meddlers in public affairs. H. Johnson, "The Environmental Protection Act of 1971," 46 Conn. B.J. 422, 423 (1972). The prevailing belief was that the public's interest would be protected by public authorities and that allowing citizens to file suit would cause the courts to be "overrun by self-appointed protectors of the public interest." *Hiland* v. *Ives,* 28 Conn. Sup. 243, 247, 257 A.2d 822 (1966).

Although such concerns repeatedly were expressed by legislators discussing the bill that would become the

EPA; see, e.g., 14 H.R. Proc., Pt. 2, 1971 Sess., p. 748, remarks of Representative Robert D. King ("this Bill is an open invitation to every ecology kook in the state to zero in on his pet project regardless of its effect on the state as a whole"); the prevailing belief was that our state's natural assets were protected insufficiently under then current law. "[T]his bill . . . expands the right of a person to have access to the courts when property which we might say belongs to all of the public is jeopardized by the alleged polluting activity. Presently a person, unless he can show a personal direct ownership or other interests in the land which he claims [is] being affected by the alleged activity, does not have legal standing in the court of law. Consequently, some of the most beautiful aspects of our environment, some of those most vital not only to our survival, but to that of future generations are such that they do not lend themselves to a proprietary or a personal interest and this bill makes the guaranteeing and the preservation and the protection of these rights available to the general public which they are not presently under our law." Id., p. 739, remarks of Representative John F. Papandrea; see generally E. Gellhorn, "Public Participation in Administrative Proceedings," 81 Yale L.J. 359 (1972). The bill was passed and became the EPA.

To further its goal of protecting the environment, the EPA waives the traditional aggrievement requirement in two ways. First, General Statutes § 22a-16 authorizes any citizen or organization, without having to first establish aggrievement, to initiate a declaratory or injunctive action to protect the public trust. Second, § 22a-19 authorizes any citizen or other entity, without having to first establish aggrievement, to intervene in an existing proceeding. We view these two provisions as operating hand in hand to grant a full range of protection to our state's environmental resources. *State* v. *State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134

(1997) (statutes should be read together when involving similar subject matter). Section 22a-16 allows the initiation of declaratory or injunctive actions to challenge an environmental harm, and § 22a-19 allows intervention in already existing administrative proceedings. In essence, the EPA allows Connecticut citizens and organizations to act as private attorneys general, protecting the public trust in a manner that the state, with its limited resources, could not achieve. *Greenwich* v. *Connecticut Transportation Authority*, 166 Conn. 337, 343, 348 A.2d 596 (1974); see generally R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 32.6, pp. 122–32.

The plaintiff contends that this court need not look beyond *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 563 A.2d 1339 (1989), to resolve the issue before us. In *Red Hill Coalition, Inc.*, the conservation commission of the town of Glastonbury argued that Julianne Steffens, president of the Red Hill coalition, lacked standing to appeal under § 22a-19 because Steffens had not intervened in the underlying administrative proceeding. Id., 715–16. The Supreme Court disagreed and concluded that "by joining the coalition's appeal to the Superior Court . . . [Steffens was] not statutorily required to file a notice of intervention before the commission." Id., 716.[5]

We do not agree that the holding in *Red Hill Coalition, Inc.*, is conclusive under the facts of this case. *Red Hill Coalition, Inc.*, held that a person who had not intervened in the administrative proceedings could

[5] The court in *Red Hill Coalition, Inc.*, also concluded that Thomas Fitzgerald, another plaintiff, had standing. *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 716. Because Fitzgerald was an abutting landowner of the challenged subdivision, however, he was considered "traditionally aggrieved"; (internal quotation marks omitted) id.; and is thus less important to our discussion. Unlike Fitzgerald, Steffens did not possess traditional aggrievement and claimed standing solely under § 22a-19.

*join a valid appeal initiated by other parties.* The plaintiffs here have a more tenuous connection to the proceeding than did Steffens in *Red Hill Coalition, Inc.* They seek their own independent appeal to the Superior Court from a decision rendered without their participation at the administrative agency level and where no party to the administrative hearing brought an appeal. In essence, *Red Hill Coalition, Inc.*, does not confirm whether entities or individuals, such as the plaintiffs, hold an independent right under § 22a-19 to appeal from an agency's decision. Accordingly, even with the benefit of the ruling in *Red Hill Coalition, Inc.*, we must independently review the applicability of § 22a-19 to the facts of this case.

"When interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . Moreover, the meaning of statutory language must be determined from a reading of the statute as a whole. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." (Citations omitted; internal quotation marks omitted.) *Reliance Ins. Co.* v. *Reider*, 54 Conn. App. 77, 83, 730 A.2d 1229, cert. denied, 250 Conn. 928, 738 A.2d 659 (1999). As we will discuss, the plain meaning of § 22a-19 does not permit this appeal.

In short, § 22a-19 allows any individual or entity to "intervene as a party" in certain proceedings or judicial review thereof to challenge harm to the environmental public trust. The plain meaning of the word "intervene" highlights the joining of an existing action, even when viewing the term as it was defined at the time our legislature enacted the EPA. "Intervene" is defined as "[t]o come between. To become a party to an action by way of intervention." Ballentine's Law Dictionary (3d Ed. 1969). Similarly, "intervention" is defined, inter alia, as "the proceeding by which one not originally a party to an action is permitted, on his own application,

to appear therein and join one of the original parties in maintaining the action or defense . . . ." Id. When discussed within the context of § 22a-19, the word "intervention" is similarly used. "Intervention allows one who was not a party in an original action to become a party upon his request. He has a derivative role by virtue of an action already shaped by the original parties." *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 48, 526 A.2d 1329 (1987). In sum, "intervention" does not mean "initiate," and it is a word in the statute that we cannot ignore. See *Kaeser* v. *Zoning Board of Appeals,* 218 Conn. 438, 443, 589 A.2d 1229 (1991) (legislation to be interpreted to give meaning to every word). Section 22a-19 does not grant the plaintiffs the right to initiate their own appeal without having first participated in the administrative proceedings or having joined in an existing appeal by other parties.

Furthermore, the plaintiffs did not intervene in a "proceeding" as required by § 22a-19. As with our previous analysis, we start with the plain meaning of the term proceeding in construing the statute. See *Reliance Ins. Co.* v. *Reider,* supra, 54 Conn. App. 83. "[T]he term proceeding, as ordinarily used, is generic in meaning and broad enough to include all methods involving the action of courts . . . ." (Internal quotation marks omitted.) *State* v. *Ventola,* 122 Conn. 635, 639, 191 A. 726 (1937); *Second Injury Fund* v. *Lupachino,* 45 Conn. App. 324, 346 n.15, 695 A.2d 1072 (1997); Regs., Conn. State Agencies § 22a-3a-2 (a) (1); 1 Am. Jur. 2d, Actions § 3 (1994). Other definitions are similarly broad. A "proceeding" is defined as "any application to a court of justice, however made, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object." Ballentine's Law Dictionary (3d Ed. 1969).

Simply put, the plaintiffs could not intervene in any proceeding under § 22a-19 because no proceeding

existed for the plaintiffs to join. Proceeding means "the form in which actions are to be brought and defended, *the manner of intervening in suits*, of conducting them of opposing judgments and of executing." (Emphasis added; internal quotation marks omitted.) *Fairfield* v. *Connecticut Siting Council*, 37 Conn. App. 653, 665, 656 A.2d 1067 (1995), rev'd on other grounds, 238 Conn. 361, 679 A.2d 354 (1996). "Ordinary proceedings intend the regular and usual mode of carrying on a suit by due course of common law." (Internal quotation marks omitted.) *Statter* v. *United States*, 66 F.2d 819, 822 (9th Cir. 1933). In April, 1998, the commission approved the subdivision application of Jacques. Because no party to the proceeding chose to appeal from the commission's decision, the decision ended the proceeding. Accordingly, the plaintiffs do not have standing to appeal because no proceeding under § 22a-19 existed at the time the plaintiffs attempted to appeal from the commission's decision.

Furthermore, the legislative history of § 22a-19 reveals no intention different from what the statute, in its plain meaning, instructs. See H. Johnson, supra, 46 Conn. B.J. 422–31. Legislators discussing the precursor of § 22a-19 described the provision in a straightforward manner. "In this measure, we are granting individual citizens some powerful weapons, the right to seek injunctions, the right to intervene in proceedings." 14 S. Proc., Pt. 3, 1971 Sess., p. 1083, remarks of Senator Thomas F. Dowd, Jr. "In Section 6 [of the forerunner of the EPA], in all the administrative and licensing procedures and any Judicial view, any of the parties previously mentioned, may intervene." Id., p. 1092, remarks of Senator Stanley J. Pac. Accordingly, the legislative history of the EPA, discussing the relevant section in plain terms, supports our interpretation of § 22a-19.

Not only does the plain language of § 22a-19 not permit what the plaintiffs seek, but our Supreme Court

has implicitly recognized the limitation of § 22a-19 that we articulate here. The court, even when expanding § 22a-19 to its farthest reaches, has never authorized an independent right to appeal by a nonparty to the administrative proceeding where no party has appealed from the agency's decision. "[The EPA] allows a member of the general public to intervene in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action." *Connecticut Water Co.* v. *Beausoleil,* supra, 204 Conn. 44–45. If a person participates in the administrative proceeding under § 22a-19, then that person may bring an appeal under § 22a-19 for the limited purpose of raising environmental issues. *Red Hill Coalition, Inc.* v. *Conservation Commission,* supra, 212 Conn. 715–16. Ten years after *Red Hill Coalition, Inc.,* the court affirmed that principle in *Branhaven Plaza, LLC* v. *Inland Wetlands Commission,* 251 Conn. 269, 276 n.9, 740 A.2d 847 (1999), stating: "Because the plaintiffs filed a notice of intervention at the commission hearings in accordance with § 22a-19 (a), they had standing to appeal the environmental issues associated with that commission's decision." In this case, participation by the plaintiffs at the administrative level is lacking.

The absence of appellate access through § 22a-19 to an administrative agency proceeding without prior intervention or the joining in an existing appeal does not inhibit the broad intention of the legislature in enacting the EPA. For example, § 22a-16 provides an original remedy to the plaintiffs. Indeed, the plaintiffs noted at oral argument to this court that they have such an action presently pending. Our decision does not slam the door on environmentally concerned citizens and other entities, but rather promotes the simple task of intervening in a proceeding at the administrative agency level to secure the right to appellate review.

We acknowledge that "[a] statute should not be interpreted in any way to thwart its purpose." *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975). In construing the meaning of a statute, however, "courts do not torture words to import ambiguity where the ordinary meaning leaves no room for it"; (internal quotation marks omitted) *Szczapa* v. *United Parcel Service, Inc.,* 56 Conn. App. 325, 330, 743 A.2d 622, cert. denied, 252 Conn. 951, 748 A.2d 299 (2000); and "[i]t is well settled that a statute must be applied as its words direct." (Internal quotation marks omitted.) *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989); see also General Statutes § 1-1 (a). The words of § 22a-19 direct citizens and other entities to protect the public trust of Connecticut's environmental resources through intervention in proceedings or judicial review. Section 22a-19 simply does not permit entities or individuals such as the plaintiffs to conduct an independent, nonparty appeal where no parties from the underlying proceeding are appealing themselves and where the entities or individuals seeking to appeal did not participate in the underlying proceeding.

II

The plaintiffs also contend that the trial court improperly denied their motion for a continuance. We disagree.

A trial court holds broad discretion in granting or denying a motion for a continuance. "Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances." (Internal quotation marks omitted.) *State* v. *DeCaba,* 42 Conn. App. 141, 143, 679 A.2d 35, cert. denied, 239 Conn. 915, 682 A.2d 1008 (1996). "An abuse of discretion must be proven by the appellant by showing that the denial of

the continuance was unreasonable or arbitrary." *State* v. *Bradley*, 39 Conn. App. 82, 87, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). It is not appropriate for us to decide whether we, as trial judges, would have reached a different result, but, rather, whether the trial court abused its discretion in denying the continuance. See *State* v. *Hamilton*, 228 Conn. 234, 240–41, 636 A.2d 760 (1994) (listing numerous factors relevant to trial court's discretion regarding continuances).

One relevant factor that a court may consider in evaluating a motion for a continuance is the perceived legitimacy of the reasons proffered in support of the motion. Id., 240. The plaintiffs in their motion stated that a continuance was necessary because opposition to the defendants' motions to dismiss required matters of record that occurred before the commission that had not yet been delivered to the plaintiffs.

Although the absence of similar materials may be quite relevant under certain circumstances, the court's denial of the motion for a continuance does not constitute an abuse of discretion. In short, the defendants' motions to dismiss were not bound up in fact-laden issues that demanded a complete factual record. The issue before the court regarding the motions to dismiss was whether the plaintiffs had independent standing under § 22a-19 to pursue an appeal from the commission's decision when they did not participate in the proceeding before the agency—a question of law, not fact. It was not an abuse of discretion for the court to conclude that acquisition of that record would not materially aid resolution of the relevant issues. Accordingly, the decision to deny the continuance to obtain those facts does not constitute an abuse of the court's broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.