[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal by the plaintiff, Robert Fromer, from a final decision by the Commissioner of the Department of Environmental Protection ("Department"). The Commissioner served as a hearing officer in reviewing an application brought by the Department of Economic and Community Development ("DECD") for an exemption under the provisions of the environmental laws governing flood management. General Statutes § 25-68d(d). After a hearing, the Commissioner approved the application and Fromer has appealed pursuant to General Statutes § 4-183
of the Uniform Administrative Procedure Act ("UAPA."). CT Page 5778
The DECD applied to the Department for the exemption in the context of providing finding to the New London Development Corporation ("NLDC") for redevelopment of a former United States Naval facility on a previously filled and intensively developed site in New London harbor. The exemption application triggered a contested case proceeding within the Department and the matter went to hearing commencing on October 7, 1999. Fromer was given permission to intervene pursuant to the Connecticut Environmental Protection Act, General Statutes § 22a-19 (a).
The final decision of the Commissioner dated December 3, 1999, made findings of fact that may be summarized as follows:
 1. The DECD proposes to provide financial assistance to the NLDC to support the Fort Trumbull Municipal Development Plan.
 2. The Fort Trumbull Plan proposes to create a mixed-use development area including a hotel, a health center, up to 80 residence units, and office and development facilities.
 3. The location of this proposed development is on the Fort Trumbull peninsula, New London.
 4. DECD proposes to finance a project that will result in the placement of fill and the construction of a hotel and residential complex in an area presently within the 100-year floodplain.
 5. DECD's proposal states that fill will be placed to raise the ground elevation above the 100-year flood level as depicted on the maps of the National Flood Insurance Program.
 6. DECD's proposal states that a letter of map revision will be obtained from the Federal Emergency Management Agency (FEMA) before construction begins. This will have the effect of removing the area of proposed fill from the 100-year floodplain on a revised National Flood Insurance Program Map.
 7. The proposed project has no impact on flood storage or flood velocity issues because this area of the Thames River is tidally influenced and not subject to riverine flooding. CT Page 5779
 8. Existing floodplain elevations in the hotel and residential development sites are at a relatively high elevation and within 1-3 feet of the 100-year flood level elevation. A relatively small amount of fill is required to remove these development sites from the floodplain.
 9. Residential buildings proposed for the sites will be constructed in accordance with provisions of the National Flood Insurance Program with lowest floors and any mechanical spaces at 13.4 feet NGVD, one foot above the 500 year base elevation.
 10. During the 100-year design storm, the evacuation route will be impassible to emergency vehicles for only fifty minutes out of the twelve-hour tidal cycle.
 11. The evacuation route does not become subject to flooding during the ten-year coastal storm.
 12. The proposed project complies with the minimum requirements of the National Flood Insurance Program, 44 C.F.R. Part 60.3.
 13. An outline for an emergency operations plan has been created.
 14. DECD has not yet obtained a conditional letter of map revision or a letter of map revision from FEMA even though a methodology for such revision exists.
(Return of Record ("ROR"), Item A, pp. 9-10.)
The Commissioner concluded that DECD had not been able to certify that its proposal "promotes long-term nonintensive floodplain uses" under General Statutes § 25-68d(b)(4). This required an exemption hearing under General Statutes § 25-68d(d). He concluded that the exemption should be approved and found, as required by the statute, that the project was in the public interest, would not injure persons or damage property in the area, complied with the provisions of the National Flood Insurance Program; and the NLDC had been informed that increased flood insurance premiums may result from the project. The exemption was given with several conditions. (ROR, Item A, pp. 16-19.) CT Page 5780
Fromer has appealed from the final decision. He is statutorily aggrieved under General Statutes § 22a-19 (a) to raise environmental matters. See also Branhaven Plaza v. Inland Wetlands Commission,251 Conn. 269, 276 n. 9 (1999); Hyllen-Davey v. Plan Zoning Commission,57 Conn. App. 589, cert. denied, 253 Conn. 926 (2000).
In addressing the claims raised by Fromer, "the usual scope of a court's review of administrative action is quite limited. . . ." (Citations omitted.) Starr v. Commissioner of Environmental Protection,226 Conn. 358, 371 (1993). It is the function of the trial court to determine "whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." (Citations omitted.) Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639
(1990). If there is evidence in the record supporting any of the reasons given, the final decision must be upheld. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-540 (1991). Finally "[j]udicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . ." (Citations omitted.)Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489,496 (1986).
Fromer summarized the issues in this matter, as he saw them, at the hearing on the merits of January 11, 2001. The first issue raised by Fromer is that the "application package" submitted by DECD was incorrect or incomplete. He claims that DECD was applying for a license under § 4-166 (6) and was required to file a more extensive application. Section 25-68d(d) requires that the application "include a statement of the reasons why such agency is unable to comply with said subsection and any other information the commissioner deems necessary." See also Regs., Conn. State Agencies § 25-68h-1 (f) (referring to General Statutes § 25-68d(d), the statute itself, for the procedure to be followed for an exemption.) The court has reviewed the application submitted by DECD and finds that it satisfies the language of § 25-68d(d); it supplies the reasons for the sought-after exemption as well as supporting data. (ROR, Item C, DECD-1.)
Fromer next argues that the notice of the Commissioner's hearing dated September 27, 1999, was defective under § 4-177. The court has reviewed the notice issued in this case.[1] (ROR, Item C, DEP-2.) The notice sets forth the time, place, and nature of the hearing, states the legal authority and statute involved [a Department hearing under §25-68d(d) on whether an exemption should issue] and a summary of the matters to be taken up at the hearing. The notice meets the statutory CT Page 5781 requirements. Woodburn v. Conservation Commission, 37 Conn. App. 166,178, cert. denied, 233 Conn. 906 (1995). More generally all that is required is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . ." (Citations omitted.) Mullane v. Central Hanover Bankand Trust Co., 339 U.S. 306,314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
Fromer next argues, referring to § 22a-19 (b), that the Commissioner did not consider alternatives to allowing the exemption. It has been held, however, that the Commissioner would first have to make a finding of fact that the proposed activity is "reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the . . . water . . . resources of the state." General Statutes § 22a-19 (a). "Absent such a finding of fact by the [Commissioner], the subsequent provisions of subsection (b) [on the need to set forth alternatives] do not come into play." Fromer v. Boyer-NapertPartnership, 42 Conn. Sup. 57, 58 (1990), aff'd, 26 Conn. App. 185
(1991).
Here, the Commissioner, after hearing from Fromer as well as the Department's witness, Arthur Christian,[2] concluded that matters of environmental concern were not affected in any major degree. (ROR, Item A, p. 15.) The exemption was conditioned on the requirement that no inland wetlands, tidal wetland, intertidal flats, coastal waters or near shore waters were to be filled as a result of the project. (ROR, Item A, p. 17; Item B-2, p. 164 (testimony of Christian.)) The Commissioner also concluded that there was no substantial evidence to indicate that "the quantity of storm water discharge, whether alone or in combination with other discharge points, will lead to unreasonable pollution." (ROR, Item A, p. 14.) In light of these findings, this case is not one where alternatives needed to be considered by the Commissioner. Paige v. TownPlan Zoning Commission, 235 Conn. 448, 462-63 (1995).
Fromer argues that Scenic Hudson Preservation Conference v. FederalPower Commission, 354 F.2d 608 (2d Cir. 1965) and General Statutes §22a-1b mandate that alternatives be considered. Here, the Commissioner found that an environmental impact statement had been prepared for this site by DECD, and that the Office of Policy and Management ("OPM") had reviewed it for compliance with the Environmental Policy Act and had approved it with conditions before the hearings on the exemption began. (ROR, Item A, p. 13.)
OPM review had included an analysis of alternatives. (Testimony of Arthur Christian, Item B-2, pp. 159-60.) The Commissioner therefore properly concluded that the environmental alternatives had been considered CT Page 5782 in the OPM proceeding, As he stated:
 The limited issue before me in this hearing is an approval of exemption pursuant to Conn. Gen. Stat. § 25-68d(d). Prior to DECD's instant application for approval of exemption, an environmental impact evaluation (EIE) for the Fort Trumbull Municipal Development Plan was reviewed by Office of Policy and Management (OPM) Under Secretary Leonard F. D'Amico. . . . Under Secretary D'Amico found the EIE to satisfy the requirements of Connecticut Environmental Policy Act . . .
 In the absence of a compelling argument of environmental degradation resulting from this proposal, my inquiry must be limited to those environmental concerns that are directly related to the limited issues that I am required to address pursuant to my authority and jurisdiction. . . .
(Emphasis in original.) (ROR, Item A, p. 13.)
The next issue raised by Fromer is that the Commissioner did not find a consistency with the Coastal Management Act, Chapter 444 of the General Statutes. While DCED does have a duty to comply with the Coastal Management Act in supporting the Fort Trumbull project, this obligation to satisfy the Act is to met through its submission of materials to OPM. General Statutes § 22a-100 (b).[3] Thus, the consideration of "consistency" does not occur in the course of seeking an exemption under § 25-68d(d). The Commissioner in his final decision did refer to the Coastal Management Act, conditioning his approval of the exemption on the requirement that no fill be placed in the coastal waters. (ROR, Item A, p. 17.) The Department and OPM continue to monitor the project's compliance with the Coastal Management Act.
Fromer's next point is that the Commissioner did not consider in granting the exemption that the municipalities in this matter had not completed the coastal site review process as set forth in § 22a-101-109 of the Regulations of Connecticut State Agencies. Under General Statutes § 22a-104 (e), the Department has a role to comment to zoning officials during this process. This role has no bearing on the separate process of granting an exemption under § 25-68d(d). Therefore, there is no merit to Fromer's claim that the exemption was awarded without linking the municipal determinations to the Commissioners' approval.
Fromer's next contention is that the Commissioner did not identify in CT Page 5783 his final decision whether the DECD was seeking an exemption from an "activity" or a "critical activity" as defined in § 25-68b(1). He argues that the Commissioner has not considered the matter of the exemption fully unless this determination is made, as it affected evidence on the floodplain to be considered. The findings of fact show that the Commissioner considered the testimony of the Department's witness, Christian. The Commissioner found that the "proposal states that fill will be placed to raise the ground elevation above the 100-year flood level. . . ." (ROR, Item A, p. 9, ¶ 6.) He also found that "[a] relatively small amount of fill is required to remove these development sites from the floodplain." (ROR, Item A, p. 10, ¶ 9.) These findings indicate that the Commissioner considered this an "activity," not a "critical activity." Therefore, the Commissioner had before him sufficient evidence to make a determination.
Fromer claims that the Commissioner did not have before him sufficient evidence on the issue of whether the activity will "injure persons or damage property in the area of such activity. . . ." General Statutes § 25-68d(d)(1). The Department presented the evidence of its employee, Christian, who had analyzed the DECD application and concluded that the project would not injure persons or property. (ROR, Item B-1, pp. 80-83.) While Fromer disagrees with Christian's testimony as insufficient and relies on his own points in the record, the court will not engage in Fromer's suggested review. As indicated above, the Commissioner has the right to select the evidence in the record to justify his position. Griffin Hospital v. Commission on Hospitals HealthCare, supra, 200 Conn. 496 (court cannot substitute its judgment for that of the administrator).
Fromer claims that the Commissioner was biased against him. In Breinerv. State Dental Commission, 57 Conn. App. 700, 706 (2000), the Appellate Court summarized the standard for a finding of bias by a hearing officer as follows: "To prove bias as a ground for disqualification, the plaintiff must show more than an adjudicator's announced previous positionabout law or policy. He must make a showing that the adjudicator hasprejudged adjudicative facts that are in dispute. . . . The bias must be so prevalent that it is too high to be constitutionally tolerable . . ." (Brackets omitted; citations omitted; emphasis in original; internal punctuation omitted).
Fromer has failed to demonstrate bias on this record. He points to a lawsuit by a department employee pending in federal court against the Commissioner. The allegations of the federal complaint make no reference to the NLDC project. Fromer also notes that the Commissioner, in his official capacity, appeared at meetings with the president of NLDC and the commissioner of DECD and the State Bond Commission. He presumes that CT Page 5784 the NLDC project must have been discussed and alleges that the Commissioner took an active part. Fromer's presumption does not constitute sufficient evidence of bias. There was nothing presented by Fromer to show that the Commissioner's "open-mindedness and sense of fairness" had been affected by his attending these meetings. Anderson v.Zoning Commission, 157 Conn. 285, 290-91 (1968).
The record contains minutes of a meeting occurring over a year before the exemption was sought at which the Commissioner urged that development of the New London area take place and stated his case for Fort Trumbull state park. (ROR, Item C, DEP-5 attachment.)[4] These minutes do not show that the Commissioner pre-judged the facts necessary to determine the appropriateness of the exemption under § 25-68d(d).
Fromer next takes issue with the Commissioner's ruling of October 19, 1999, allowing him to proceed as an intervenor under § 22a-19 (a) and not as a party. (ROR, Item D, Number 59.) The Commissioner correctly ruled here. Fromer appeared at the October 7, 1999 hearing date without any motion at all. He was allowed to participate. Then prior to the October 20, 1999 hearing date, Fromer moved to intervene under §22a-19, and the Commissioner allowed the intervention. As the Commissioner pointed out, Fromer never filed a petition so as to become a party as opposed to an environmental intervenor. (ROR, Item D, No. 59, p. 11.) The extent of Fromer's participation in the hearings, which was quite full, convinces the court that there was no violation of his procedural rights. See General Statutes § 4-177a(d) (permitting a hearing officer to limit an intervenor's participation.)
Section 25-68d(d) requires a hearing to determine whether the Commissioner might allow an exemption. The statute is silent on whether the Commissioner might conduct the hearing. Fromer claims that the Commissioner erred in designating himself as the hearing officer, and should have designated a hearing officer from the adjudications office of the Department. The Commissioner chose to become the hearing officer as he believed that he would be more impartial than other members of his staff. (ROR, B-1, p. 13.) He had the legal authority to serve as hearing officer and did not err in doing so. General Statutes § 22a-6
(a)(3); Regs., Conn. State Agencies § 22a-3a-2 (b)(4).
According to Fromer (Brief, p. 30), the Department issued a tentative determination two months after DECD had applied for the exemption. (See also ROR, Item C, DEP-1.) Fromer finds nothing in § 25-68d allowing for the staff of the Department to make a tentative determination and assigns an error in that the Department used a "tentative determination" procedure. Even if Fromer as an environmental intervenor had standing to raise this argument, he has not shown prejudice. The Commissioner had the CT Page 5785 discretion after the hearing to reach his own result, even where a tentative decision had been made. Without prejudice, the court cannot reverse the Commissioner's determination. General Statutes § 4-183
(j); Pet v. Department of Health Services, 228 Conn. 651, 664 (1994).
Fromer next sets forth the requirement that no agency undertake an "activity" within the floodplain unless the Commissioner issue an certification or grant an exemption. General Statutes § 25-68d(a). He contends that the Commissioner erred in not requiring proof by DECD that its proposal promoted long-term nonintensive floodplain use. General Statutes § 25-68d(b)(4). (One requirement for a certification.) Fromer's argument fails because DECD was not required to seek a certification, acknowledged that it could not seek the certification regarding subsection b(4), and therefore applied for an exemption. The DECD followed the exemption procedure by applying to the Department and the Commissioner acted accordingly.
The Commissioner made the determination in this decision that the proposed project was in the public interest, a requirement for the exemption of § 25-68d(d). (ROR, Item A, p. 17.) Fromer argues that this finding was flawed. The court finds, however, that there is substantial evidence in the record to support this determination. The testimony of Christian concurred with DECD that developable property would be returned to New London's tax base, improve public access and lessen the intensive use currently at the site. (ROR, Item B-1, p. 81.)
According to Christian, the proposal would have no impact upon flood storage or flood velocity because the Thames River is tidally influenced and not subject to "riverine flooding." The fill proposed for the hotel and residential portion of the proposed development was minor, since the hotel and residential sites were already at a relatively high elevation relative to the 100-year flood level for the area. (ROR, Item B-1, pp. 81-82.) Emergency evacuation was manageable and any impossibility issues were distinctly limited in duration during the design storm event. (ROR, Item B-1, p. 82.)
At the hearings Fromer raised the issue that the site would be affected by climatic changes, possible sea-level rise, and wave height. Christian demonstrated that these concerns were hypothetical. (ROR, Item B-2, pp. 103-04, 150-53.) The record thus supports the conclusion of the Commissioner: "I do not believe Mr. Fromer's concerns rise to the level where I could determine that the proposed project and requested approval are not in the public interest. In addition, these items of environmental concern must be addressed in subsequent proceedings before this project can lawfully proceed." (ROR, Item A, p. 17.) CT Page 5786
Fromer's final argument is that the only regulation mentioning the hearing to be conducted on the exemption — § 25-68h-1 (f) — refers the applicant back to the provisions of General Statutes § 25-68d. This reference back to the statutes in establishing procedural rules to conduct the hearing is said to be unconstitutionally vague, and render the hearing unconstitutional. Fromer as an environmental intervenor does not have the standing to raise this issue. Even if he had the standing, the issue has been resolved in Goldberg v.Insurance Department, 207 Conn. 77, 83-84 (1988): "Thus, where, as here, a party challenges the failure of an administrative agency either to adopt or publish sufficient procedural rules, that party bears not only the burden of overcoming the presumption of validity that attaches to the agency regulations that exist . . . but must also demonstrate some prejudice as a result of the agency's alleged failure. . . ." (Citations omitted.) Fromer has not met this burden in this case, as the hearing was conducted in a procedurally correct manner under the provisions of the statute.
Since the court has considered and disposed of the claims raised by Fromer, the appeal is dismissed.
Henry S. Cohn, Judge