## John Fraenza *v.* Timothy R. E. Keeney, Commissioner of Environmental Protection, et al.

Superior Court    Judicial District of    File No. 516748
Hartford-New Britain at Hartford

Memorandum filed February 11, 1994

*Cooper, Whitney, Cochran & Francois,* for the plaintiff.

*John M. Looney, Jr.,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the named defendant et al.

Maloney, J. The plaintiff appeals the decision of the named defendant, the commissioner of environmental protection (commissioner), denying the plaintiff's application for a tidal wetlands permit pursuant to General Statutes § 22a-32 and a structures and dredging permit pursuant to General Statutes § 22a-361. The plaintiff appeals under General Statutes § 4-183. The court finds the issues in favor of the commissioner.

The following essential facts are undisputed. In December, 1986, the plaintiff filed an application with the defendant department of environmental protection

(department) seeking permits pursuant to §§ 22a-32 and 22a-361 to allow him to construct a marina on his property at 61 Goodsell Point Road in Branford, located on the Branford River. Because Branford is within the statutorily designated coastal zone, the plaintiff also had to demonstrate, pursuant to General Statutes § 22a-98, that his application was consistent with all applicable goals and policies set forth in General Statutes § 22a-92 of the Coastal Management Act and that it incorporated all reasonable measures mitigating any adverse impacts on coastal resources.

Subsequent to filing the application, the plaintiff made numerous revisions to it after consultation with department staff. The application acted upon by the commissioner was the revision submitted on September 29, 1989, as modified on June 21, 1990. In that application, the plaintiff sought the permits for regulated activities in conjunction with the construction of a twenty-five slip marina, including the construction of a timber bulkhead, a wooden float system, an "L" shaped pier, a ramp and fingers, a timber and pile-bent marine railway, the dredging of 1193 cubic yards of fill to be disposed of at an unnamed approved location in Long Island Sound, the deposition of 121 cubic yards of fill behind the proposed timber bulkhead, and the restoration of an area seaward of the bulkhead. In addition, the plaintiff sought a perimeter permit to allow him to reconfigure the locations, the widths and the numbers of piles, piers, docks and floats without having to apply for a new permit to conduct any of these activities that may be regulated. The application, however, neither specified the reconfiguration perimeter nor the extent of any reconfiguration activities that might take place. The focus of the proposed pleasure boat marina was to provide docking, anchorage and hauling facilities for boats for personal use.

A public hearing on the plaintiff's application was held before a department hearing officer, commencing June 19, 1990, and concluding on July 10, 1990.

More than a year later, on August 8, 1991, the hearing officer issued his proposed final decision. The hearing officer found that the site was suitable for a marina, but recommended denial of the specific application, without prejudice. The plaintiff then requested oral argument before the commissioner. The parties filed briefs, and oral argument was held on October 9, 1991.

Eight months later, on June 2, 1992, the commissioner filed his final decision. In his final decision, the commissioner adopted most of the hearing officer's findings and conclusions, and accepted the hearing officer's recommendation that the plaintiff's application be denied. The commissioner's decision was based on the following findings and conclusions: (1) While the site is generally suitable for construction of a marina, this specific proposal conflicts with state environmental and wetlands statutes and policies as follows: (a) The proposal will result in significant adverse impacts to the on-site tidal wetlands, both mapped and unmapped, and therefore is inconsistent with the state's policy to preserve these wetlands and to prevent the despoliation and destruction thereof as required by General Statutes §§ 22a-28 (a) and 22a-92 (b) (2) (E). (b) The construction of the bulkhead and fill area will create developable land from tidal wetlands and is patently inconsistent with § 22a-92 (c) (1) (B). (c) Destruction and degradation of coastal resources are not held to a minimum, contrary to the policies stated in § 22a-92 (b) (1) (D). (d) The project will not preserve and enhance coastal resources in accordance with the policies established in § 22a-92 (a) (2). (e) The project will not ensure that the development, preservation or use of the land and water resources of the coastal area proceeds in a manner consistent with the capability of the land and water

resources to support development, preservation or use without significantly disrupting either the natural environment or sound economic growth under § 22a-92 (a) (1). (f) The project will not protect coastal resources by requiring, where feasible, that such boating uses and facilities minimize disruption or degradation of natural coastal resources under § 22a-92 (b) (1) (H). (2) While the site is suitable for a marina, feasible and prudent alternatives exist, such as scaling back or redesigning the marina, which would significantly lessen the adverse environmental impacts to the tidal wetlands while still constructing a marina there. (3) The creation of approximately 850 square feet of tidal wetlands is not sufficient mitigation of the loss of 5162 square feet of such wetlands. (4) The activities for which permits are sought are not authorized under General Statutes § 22a-19 (b) because the proposal is likely to have the effect of unreasonably impairing or destroying the public trust in a natural resource of the state, and the applicant has not shown that there exists no "feasible and prudent" alternatives to his proposal.

Among the several "feasible and prudent" alternatives found to exist by the hearing officer and adopted by the commissioner were moving the bulkhead or other structure used to hold the fill landward of the unmapped tidal wetlands, extending a riprap slope or other method to prevent erosion from the hard vertical face of the bulkhead to counter possible adverse wave refraction on the tidal wetlands, or scaling back or reconfiguring the project in some other way, with perhaps a smaller marina with less of an adverse environmental impact upon the tidal wetlands.

On October 23, 1992, the commissioner and the department filed a motion to dismiss the plaintiff's appeal of the denial of the application for a structures and dredging permit under § 22a-361 on the ground that the underlying agency proceeding was not a con-

tested case for purposes of an appeal under § 4-183, and to dismiss the plaintiff's taking claim on the ground that the plaintiff did not establish the finality of the commissioner's decision. The court, *Dunn, J.,* denied the motion to dismiss the appeal of the denial of the structures and dredging permit, holding that the agency proceeding on that permit was a contested case. The court declined to rule on the issue of the taking claim at that time, preferring to include that issue with the other issues to be decided in the main appeal.

The commissioner and the department have renewed their motion to dismiss the appeal from the denial of the structures and dredging permit pursuant to § 22a-361 in light of the Supreme Court's recent decision in *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection,* 226 Conn. 792, 629 A.2d 367 (1993), issued since Judge Dunn's ruling on the motion to dismiss.

While a hearing was in fact held on the plaintiff's application in the present case, § 22a-361 does not require that the plaintiff's right to a structures and dredging permit be determined after a hearing or an opportunity for a hearing. Accordingly, under *Summit Hydropower,* the proceeding wherein the plaintiff's application for a structures and dredging permit was denied did not constitute a contested case under § 4-166 (2) and, therefore, the commissioner's decision with respect to that permit was not a final decision from which the plaintiff has a right to appeal pursuant to § 4-183. Id., 811–12. The plaintiff's appeal from the denial of the structures and dredging is, therefore, dismissed. The denial of the plaintiff's application to conduct a regulated activity within the wetlands constitutes a final decision in a contested case under § 4-166 (2) appealable pursuant to § 4-183 because § 22a-32 provides for an opportunity for a hearing in which the plaintiff's legal rights or privileges are

required to be determined. See id., 811. Although, as a practical matter, the plaintiff will not be able to construct his marina without both permits, the plaintiff is still entitled to judicial review of the denial of his application for a tidal wetlands permit pursuant to § 22a-32.

The plaintiff in the present case was the applicant for the tidal wetlands permit, and his application was denied by the commissioner. Accordingly, the plaintiff is aggrieved and entitled to appeal under General Statutes §§ 22a-34 and 4-183. See *Light Rigging Co.* v. *Dept. of Public Utility Control,* 219 Conn. 168, 173, 592 A.2d 386 (1991).

The usual scope of a court's review of administrative action is quite limited. *Starr* v. *Commissioner of Environmental Protection,* 226 Conn. 358, 371, 627 A.2d 1296 (1993). The court may reverse or modify an administrative decision only if substantial rights of the plaintiff have been prejudiced because " 'the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provision; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' " Id., quoting § 4-183 (j). The court must determine "whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 216 Conn. 627, 639, 583 A.2d 906 (1990). In determining whether an administrative finding is supported by substantial evidence, the reviewing court must defer to the agency's assessment of the credibil-

ity of witnesses, and the agency's right to believe or disbelieve the evidence presented in whole or in part. *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* supra, 640. The court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." General Statutes § 4-183 (j); see *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 261–62, 579 A.2d 505 (1990).

The plaintiff attacks almost every one of the commissioner's factual findings and conclusions. Each of these claims will subsequently be discussed in further detail.

The plaintiff asserts that the commissioner erred in failing to consider the actual significance of the alleged resource and other factors under General Statutes § 22a-33 supporting issuance of the permit. The plaintiff claims that the commissioner did not correctly construe or apply the policies of the Coastal Management Act. The plaintiff further claims that the record contains no evidence that the 0.12 acre of land in question serves any of the ecological functions for which tidal wetlands are defined and regulated. The plaintiff claims that in his decision the commissioner engages in no balancing of interests.

Section 22a-33 provides, in relevant part, that in granting or denying a permit, the commissioner "shall consider the effect of the proposed work with reference to the public health and welfare, marine fisheries, shellfisheries, wildlife, the protection of life and property from flood, hurricane and other natural disasters, and the public policy set forth in sections 22a-28 to 22a-35, inclusive." Section 22a-28 provides that "it is declared to be the public policy of this state to preserve the wetlands and to prevent the despoliation and

destruction thereof." One of the several policies of the act cited by the commissioner as a reason for his denial of the plaintiff's application is "to preserve tidal wetlands and to prevent the despoliation and destruction thereof in order to maintain their vital natural functions; to encourage the rehabilitation and restoration of degraded tidal wetlands . . . ." General Statutes § 22a-92 (b) (2) (E).

The commissioner found that wetlands areas as small as 0.1 acre may still be able to perform vital salt marsh functions such as erosion control, sediment filtration, biomass productivity, detritus availability and habitat. The commissioner found that filling behind the proposed bulkhead would cause 0.12 acres consisting of both designated and unmapped tidal wetlands to be lost except for a tongue of wetlands located seaward of the proposed bulkhead, and that filling of the wetlands would prevent reclamation of the wetlands because the filling and bulkhead would prevent tidal flooding needed by wetlands vegetation. The commissioner based these findings upon the testimony of Susan Bailey Gradante, an environmental analyst with the coastal permit section of the department. The commissioner was entitled to believe her testimony regarding her assessment of the site over the testimony of the plaintiff's expert, Russo, whose experience and expertise were found to be questionable. Accordingly, the commissioner's findings regarding the importance of the tidal wetlands at issue and the adverse impact of the marina as proposed upon those wetlands under the statutory sections cited by the commissioner are supported by substantial evidence in the record.

The plaintiff has pointed to no evidence in the record that supports his claims that the commissioner did not consider all of the relevant statutory criteria in his decision, ignored the statutory factors that would support the granting of the plaintiff's application, or that

the commissioner adopted a flat prohibition. The decision is not rendered erroneous or unsupported by substantial evidence simply because it is silent as to some of the factors enumerated in the statutes and does not dispute some of the plaintiff's assertions that would favor the granting of the application. The plaintiff's claims in this regard may not be sustained.

The plaintiff claims that the commissioner erred in denying the plaintiff's application on the basis of adverse impacts to unmapped wetlands. In this regard, the plaintiff asserts that the commissioner wrongfully applied the provisions of Public Acts 1991, No. 91-308 (P.A. 91-308) to the plaintiff's pending application, which had already been heard and was awaiting final decision when that act took effect. That act made the mapping provisions of General Statutes § 22a-30 discretionary rather than mandatory. Prior to the effective date of the act, the plaintiff argues, that statute effectively prohibited the commissioner from considering the impact of a project on wetlands that the defendant had not mapped.

Prior to the enactment of P.A. 91-308, § 22a-30 (a) provided, in relevant part, that the commissioner "*shall* promptly make an inventory of all tidal wetlands within the state." (Emphasis added.) Pursuant to P.A. 91-308, § 22a-30 (a) was amended to provide that the commissioner *may* make an inventory of all tidal wetlands within the state. In conjunction with this statute, § 22a-30-2 (g) of the Regulations of Connecticut State Agencies provides in part that " '[w]etland' means those wetlands *mapped* or temporarily designated in accordance with the provisions of section 22a-30 of the General Statutes as amended, and section 22a-30-4 of these regulations." (Emphasis added.) The plaintiff argues that this statutory and regulatory scheme limits the definition of regulated wetlands to those areas that the department has mapped. Since the commissioner

considered the effect his project would have partly on unmapped areas, he argues, the commissioner exceeded his authority.

The plaintiff's argument overlooks the provisions of §§ 22a-29 (2) and 22a-98. Section 22a-29 (2) provides in relevant part that " '[w]etland' means those areas which border on or lie beneath tidal waters, such as, but not limited to banks, bogs, salt marsh, swamps, meadows, flats, or other low lands subject to tidal action, including those areas now or formerly connected to tidal waters, and whose surface is at or below an elevation of one foot above local extreme high water; and upon which may grow or be capable of growing some, but not necessarily all, of the following [here the statute lists various wetlands vegetation]." The evidence in the record reflects that certain plants listed in § 22a-29 (2) grow, or are capable of growing, in an area landward of the mapped tidal wetlands on the plaintiff's property. This area, therefore, falls within the definition of "wetlands" in § 22a-29 (2) even though it is not mapped as such.

Section 22a-98 provides in part that "[a]ny person seeking a license, permit or other approval of an activity under the requirements of such regulatory programs shall demonstrate that such activity is consistent with all applicable goals and policies in section 22a-92 and that such activity incorporates all reasonable measures mitigating any adverse impacts of such actions on coastal resources and future water-dependent development activities." Section 22a-93 (7) provides that "coastal resources" include the following: "(E) 'tidal wetlands' means 'wetland' as defined by section 22a-29. . . ." As noted previously, § 22a-29 (2) does not define wetlands as only those wetlands that are mapped under § 22a-30, but as areas upon which certain plants grow or are capable of growing. Section 22a-92 (b) (2) provides that "[p]olicies concerning

coastal land and water resources within the coastal boundary are . . . (E) to preserve tidal wetlands and to prevent the despoliation and destruction thereof in order to maintain their vital natural functions; to encourage the rehabilitation and restoration of degraded tidal wetlands and where feasible and environmentally acceptable, to encourage the creation of wetlands for the purposes of shellfish and finfish management; habitat creation and dredge spoil disposal . . . ."

Under the act, therefore, the commissioner is authorized to deny the plaintiff's permit application on the basis of a finding of adverse impacts on those areas found to fall within the definition of "wetland" under § 22a-29 and § 22a-93 (7) (E), whether or not those areas have been mapped.

In addition, the commissioner found that the application, as proposed, would adversely impact *both* mapped and unmapped wetlands. Therefore, even if the provisions of § 22a-30 prior to its amendment were found to limit the commissioner's consideration of impacts only to those wetlands that are mapped, the commissioner's findings and conclusions indicate that he considered the mapped wetlands when he decided to deny the application as proposed.

The plaintiff claims that his constitutional right to procedural due process was violated by the department's delays in reviewing and acting upon his application. In a letter to the commissioner dated September 18, 1991, the plaintiff's attorney stated that "the applicant is preserving his objection to the decision based on the failure of the [department] to comply with the time deadlines set in C.G.S. § 4-180 (a)."

Section 4-180 (a) provides that each agency shall render a final decision within ninety days following the close of evidence or the due date for the filing of briefs, whichever is later. Section 4-180 (b) provides: "If any

agency fails to comply with the provisions of subsection (a) of this section in any contested case, any party thereto may apply to the superior court . . . for an order requiring the agency to render a final decision forthwith. The court, after hearing, shall issue an appropriate order."

The record in the present case contains no indication, and the plaintiff does not claim, that he invoked the procedure provided in § 4-180 (b) in order to remedy the commissioner's failure to comply with § 4-180 (a). Accordingly, the plaintiff has waived his right to object to the commissioner's noncompliance with § 4-180 (a). Since the plaintiff failed to invoke the remedy provided by statute, the court cannot find that his procedural due process rights have been violated by the delay.

The plaintiff claims that the commissioner's denial of his application was discriminatory, in violation of the plaintiff's constitutional right to equal protection. The plaintiff asserts that the commissioner's decision is discriminatory because the department has issued permits to abutting landowners for activities allegedly identical to those proposed in his application.

Equal protection of the laws prohibits the unequal treatment of those who are similarly situated. *Golab* v. *New Britain,* 205 Conn. 17, 25, 529 A.2d 1297 (1987). "An equal protection claim based on unequal application of the law does not arise from conclusory allegations regarding past decisions, but rather must be established by competent evidence." *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 321, 438 A.2d 103 (1980); *Golab* v. *New Britain,* supra, 26. "There must be a showing of intentional or purposeful discrimination." *Golab* v. *New Britain,* supra, 26.

In his final decision, the commissioner addressed this claim and found that the plaintiff's situation differed

significantly from that of the adjoining marinas, in that both marinas had been operating for decades, and wetlands areas on those sites had been dredged and filled prior to the enactment of the act and the tidal wetlands statutes. The commissioner found further that the plaintiff had not shown that the permits issued to the abutting landowners since 1971 had authorized the destruction of tidal wetlands. The record reflects no evidence supporting the plaintiff's equal protection claim, other than the bare assertions of the plaintiff that his situation is identical to the other marina owners and that denial of his permit application would be discriminatory. Accordingly, the court cannot find that the plaintiff's equal protection rights have been violated.

The plaintiff claims that the commissioner's denial of his application results in a taking of the plaintiff's property without compensation. The plaintiff asserts that the record makes perfectly clear the department's determination to deny the plaintiff all rights to develop his property as a marina.

A plaintiff "is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination." *Gil* v. *Inland Wetlands & Watercourses Agency,* 219 Conn. 404, 415, 593 A.2d 1368 (1991). If a property owner has not obtained a final decision from the administrative agency, the reviewing court lacks jurisdiction to rule on a taking claim. *Port Clinton Associates* v. *Board of Selectmen,* 217 Conn. 588, 604, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991). "To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow *any* reasonable alternative use of his property." (Emphasis in original.) *Gil* v. *Inland Wetlands & Water-*

*courses Agency,* supra, 415, citing *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 553, 525 A.2d 940 (1987).

The commissioner's decision stated that the plaintiff's property was suitable for a marina, but that the application, as proposed, was unacceptable. The commissioner suggested several ways in which the plaintiff can modify his plans to render them acceptable so that the department can issue a permit allowing him to construct his marina. The plaintiff has pointed to no evidence in the record and has submitted no evidence that shows that the suggestions of the commissioner are not feasible, or that the commissioner would deny the application if the plaintiff followed these suggestions. Accordingly, the plaintiff has failed to meet his burden of showing the finality of the commissioner's determination and the court lacks jurisdiction to consider the merits of his taking claim.

The plaintiff raises a barrage of other issues, including claims that the findings of fact "were drafted to exhibit bias and malice against the applicant," that facts were found to fit a predetermined conclusion, and that the decision contains numerous factual mistakes. The plaintiff claims that the findings of fact are contrary to the uncontested and documented facts, and they show that the drafter read only one document, the department staff comments, and ignored everything presented by the applicant at the hearing. A thorough review of the record reveals no evidence to support the plaintiff's claims of bias, malice, or predetermination. Any alleged "factual mistakes" to which the plaintiff points would not mandate sustaining the appeal as the commissioner's denial of the application is amply supported by substantial evidence in the record as discussed above regarding the application's inconsistency with the goals and policies of the tidal wetland stat-

utes and the Coastal Management Act, and the commissioner was entitled to believe the factual assertions of the department staff in support of his denial over those of the plaintiff.

For all the foregoing reasons, the plaintiff's appeal is dismissed.