[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case raises questions regarding aggrievement and whether a local zoning authority improperly rejected a zoning application to permit a helicopter landing area in a rural residential zone. A property owner and her husband have filed this appeal from the denial of the husband's application for a zoning permit to permit such usage on the wife's property, where they both reside. The aggrievement issues are whether the husband is aggrieved even though not owning the property in question, and whether the wife property owner is aggrieved though she did not join in the application for the zoning permit before the town. The plaintiffs claim that the defendant erred in (a) rejecting their claim that CT Page 6230 helicopter usage was an accessory and customary usage of their property and (b) refusing to approve such usage by special exception. For the reasons stated below, the court finds that the plaintiffs are aggrieved but, on the merits, dismisses the appeal.
 I — Facts of the Case
Plaintiff Barbara Sinclair is the owner of premises located in a Rural Residential District in the Town of Sharon where she lives with her husband, co-plaintiff James Sinclair. On December 18, 1998, James Sinclair filed an amended zoning permit application which stated:
 Request finding that helicopter landing area in RR [rural residential] zone is an accessory use pursuant to Article XI — Definitions and/or finding that helicopter landing area is a use permitted by Special Exception pursuant to Article III, three.
(Return of Record, No. 9.)
After denial of this application by the Sharon Planning and Zoning Commission on January 13, 1999, Sinclair filed a timely appeal to the Sharon Board of Zoning Appeals pursuant to Article I, §§ 2.2 and 2.3 and Article XII of the Sharon Zoning Regulations. After public notice the board held a public hearing on April 5, 1999. At that hearing, plaintiff James Sinclair submitted a 13-page document that summarized various aspects of federal law pertaining to regulation of aircraft and helicopters (pages two through four), Connecticut statutes, regulations and licensing procedures regarding helicopters and heliports (pages four and five), certain zoning regulations of the Town of Sharon (pages five through ten), and then presented his arguments why the Board should approve the zoning permit.
In addition, James Sinclair presented the following evidence:
 1. Testimony and a written report (Return of Record, No. 18) from G. A. Russell, an engineering consultant, about potential noise impact of a helicopter. He testified that based on the proposed usage the impact on neighbors would be moderate or modest, "comparable to other busy or engine-powered noise sources . . . for a short duration." (Return of Record, No. 29 — hereafter referred to as the "hearing transcript," p. 54.) CT Page 6231
 2. Testimony from Raymond Syms, an aviation consultant with extensive experience in the helicopter industry, that the proposed location on the plaintiffs' property was an "excellent site" (hearing transcript, p. 60), would not affect the property values or way of life of neighbors (hearing transcript, p. 64), would emit fewer significant air pollutants than a single two-stroke lawn mower (hearing transcript, p. 67), and that the plaintiffs' proposal had "merit technically, operationally, and . . . from the aviation planning perspective." (Hearing transcript, p. 70). The plaintiffs also submitted a written "Helicopter Feasibility and Design Study" prepared by Mr. Syms of the proposed usage by the plaintiffs. This document recommended approval of the plaintiffs' application because of the unique and unusual location of the property, the amount of property owned, the lack of effects on the community and the potential benefits in the event of any "life-saving emergency." (Return of Record, No. 19.)
 3. Testimony from Mr. John Anangus, a property owner living in the town of Glastonbury who has owned and used a helicopter at his residence for the last five years. He testified that his helicopter usage had caused no problems with his neighbors and had not had any negative impact on the community.
Sinclair's attorney also spoke before the Board of Appeals, essentially reiterating points made in the memorandum, answering specific questions and comments from Board members, and responding to comments made by others who testified at the hearing.
Various members of the public also spoke in opposition to the proposal. Two days after the hearing, on April 7, 1999, the board voted to deny the plaintiffs' appeal on the grounds that:
 (1) the proposed use is not allowed under the current Regulations and (2) the proposed use is not a customary and/or regular accessory use in Sharon, Connecticut, as, from a factual bases, a helicopter landing area has not been a habitually and by long practice established as reasonably associated with CT Page 6232 the primary use in a Rural Residential Zone.
(Return of Record, Nos. 15 and 23.) The board declined to rule on the claim for a special use exception, as had the planning and zoning commission below.
The plaintiffs served this appeal on the defendant on April 27, 1999, and the appeal was filed that same day. A hearing was held in this court on December 6, 1999. For the reasons stated below, the court sustains the decision of the Board of Appeals and dismisses the appeal.
 II — Aggrievement
Proof of aggrievement by the plaintiffs is a prerequisite to determining that the court has subject matter jurisdiction in a zoning appeal. General Statutes §§ 8-8 (a), 8-9; Bakelaar v. West Haven,193 Conn. 59, 65, 475 A.2d 283 (1984); Hughes v. Town Planning andZoning Commission (North Haven), 156 Conn. 505, 508, 242 A.2d 705 (1968). Pursuant to General Statutes § 8-8 (b), "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." Aggrievement is divided into two general categories, statutory and classical. Pierce v. Harwinton Zoning Board of Appeals, 7 Conn. App. 632,636, 509 A.2d 1085 (1986). A party is statutorily aggrieved if a statute grants the person or entity in the position of the party the right to appeal. For example, General Statutes § 8-8 (a) and (b) provide that "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision . . . may take an appeal to the superior court. . . ."
This test for statutory aggrievement is broader than the standard for classical aggrievement, which requires that plaintiffs satisfy a two-part test. Under classical aggrievement, plaintiffs must first demonstrate that they have a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest shared by all members of the community. Second, they must establish that their personal and legal interest has been specially and injuriously affected by the decision. Walls v. Planning ZoningCommission, 176 Conn. 475, 477-78, 408 A.2d 252 (1979).
On the issue of aggrievement, the court heard testimony during the trial of this matter from each of the plaintiffs. From that evidence, the court makes the following findings as to aggrievement. Barbara Sinclair owns the property in question, at which both the plaintiffs, who are married, reside. James Sinclair owns a helicopter and was once a licensed pilot, but because of blindness in one eye now employs a pilot. He uses the helicopter for business transportation to New York City and CT Page 6233 other cities and would like to use the property in Sharon to do so. If the regulations were amended to permit the proposed helicopter usage, he would use the property for helicopter takeoffs and landings. The court further finds that such usage of the land would benefit both plaintiffs.
Based on these facts, the plaintiff James Sinclair is not a statutorily aggrieved party as he has no ownership interest in the property in question. Further, if he is not aggrieved, the entire case must be dismissed, as his was the only name on the appeal from the Planning and Zoning Commission to the Zoning Board of Appeals. Under general statutes § 8-7 only aggrieved parties may file appeals to the Zoning Board of Appeals. The requirements of 8-7 are mandatory and failure to comply with them deprives a court of jurisdiction. Koepke v.Zoning Board of Appeals, 30 Conn. App. 395, 620 A.2d 811 (1993);
Whether he is classically aggrieved, however, is a more difficult question. The Connecticut Supreme Court has recognized that certain nonowners of land may be aggrieved for purposes of zoning appeals. "[T]he extent to which a party with an interest in the property other than that of an owner is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal an order." Primerica v. Planning ZoningCommission, 211 Conn. 85, 93, 558 A.2d 646 (1989). To show that a nonowner is aggrieved, the court must examine a variety of factors specific to the facts of each case, such as "whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property." R R Pool Home, Inc.v. Zoning Board of Appeals, 43 Conn. App. 563, 572, 684 A.2d 1207 (1996).
Applying these criteria, the court finds that James Sinclair is classically aggrieved. Although he has no present legally protected interest in the property in question, he does, however, live there. From the testimony of the parties, the court finds that he shares control of the premises with his wife. Although she could, as owner, transfer the property without his consent, still, Mr. Sinclair, as spouse of the owner, has a potential interest in the property that would be protected by the courts of this state were she to begin proceedings to dissolve the marriage. Although the evidence does not disclose that he has a formal or written leasehold, his status is nonetheless something other than that of a mere tenant at will (for which the courts have been unwilling to find aggrievement; Primerica v. Planning ZoningCommission, supra, 211 Conn. 95). Under the laws of succession, for example, upon his wife's death, he has a right, under § 45a-436 to, CT Page 6234 at minimum, a statutory share of "a life estate of one-third in value of all the property passing under [her] will, real and personal, legally or equitably owned by the decease spouse at the time of his or her death, after the payment of all debts and charges against the estate" or, in the absence of a will, under the laws of intestate succession in §45a-437, at least one-half share of the intestate estate.
Moreover, as the Supreme Court has instructed:
 The decisions have not been based primarily on whether a particular applicant could properly be characterized as an optionee or a lessee, but, rather, on whether the applicant was in fact a real party in interest with respect to the subject property. Whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property, are all relevant considerations in making that determination.
Richards v. Planning Zoning Commission, 170 Conn. 318, 323, 365 A.2d 1130
(1976). Under any analysis, the plaintiff James Sinclair is a real party in interest with respect to the subject property. His use of the property where he lives is significantly affected by the decision to deny the zoning application. Thus, under all these circumstances the court finds that the plaintiff husband meets the standards for classical aggrievement. He has a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest shared by all members of the community. That interest has been specially and injuriously affected by the decision.
The court finds, in addition, that the plaintiff Barbara Sinclair is aggrieved. Although her husband was the only applicant in the zoning application, the general statutes do not require that zoning appeals to Superior Court may be brought only by the unsuccessful applicant for the zoning application. Even though she did not file the zoning application, plaintiff Barbara Sinclair is, under either a statutory or classical standard, aggrieved by the decision of the defendant to deny the use of her land requested in the zoning application. She owns the property in question. She has a specific, personal and legal interest in her husband being permitted to use her property for a helicopter landing site, which is the subject matter of the decision. Her interest in that use of her property is distinct from the general interest in the question that may be shared by other members of the community. Further, her personal and CT Page 6235 legal interests in the use of her property have been specially and injuriously affected by the decision.
 IV — Standard of Review
The standard for reviewing the denial of a zoning application is well established. "In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in its `legislative' or `administrative' capacity." Kaufman v. ZoningCommission, 232 Conn. 122, 150, 653 A.2d 798 (1995). The standard of review for an administrative decision of a zoning board, as here, is whether that decision is illegal, arbitrary, an abuse of discretion.Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346
(1980). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988).
When an administrative agency denies an application and gives reasons for its action, the question on appeal is whether the evidence in the record reasonably supports the agency's action. "Courts are not to substitute their judgment for that of the board; and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." Whittaker v.Zoning Board of Appeals, supra, 179 Conn. 654. The trial court cannot reverse the agency's decision on factual findings if there is substantial evidence in the record to support the agency's findings and conclusions. Fraenza v. Keeney, 43 Conn. Sup. 386, 391, 655 A.2d 1113, affirmed, 232 Conn. 401, 655 A.2d 1113 (1995). On legal questions, however, the court's review is plenary and is not bound by the opinion of the local agency.
 V — ISSUES PRESENTED
The plaintiffs raise three separate claims in their appeal — that the board erred deciding that the proposed helicopter usage was not a permitted accessory usage in a rural residential zoning district; that the zoning board of appeals wrongly decided that a request for a special exception was not appropriately before it; and that helicopter usage should be permitted as a special exception usage.[1]
 A Accessory Usage
The Sharon zoning regulations, as those of most towns, permit certain accessory uses in addition to the principal permitted uses in its CT Page 6236 various zoning districts. An accessory use is one that is dependent upon or pertains to the principal or main use of property as allowed in the zoning regulations. Fox v. Zoning Board of Appeals, 146 Conn. 70, 74,147 A.2d 472 (1958). The accessory use must be incidental to and related to the principal use. The regulations specifically define those accessory uses for the various districts.
As the defendant correctly points out here, the Sharon zoning regulations are permissive in nature. Zoning regulations that are prohibitory in character allow all uses except those expressly prohibited; see Fisher v. Board of Zoning Appeals, 143 Conn. 358, 362,122 A.2d 729 (1956); while permissive regulations affirmatively list permissible uses in the various zones and any usage not specifically enumerated as a permitted use is automatically excluded. See Planning Zoning Commission v. Gilbert, 208 Conn. 696, 708, 546 A.2d 823 (1988). Thus, the only accessory uses permitted in Sharon are those expressly specified in its zoning regulations. Since helicopter landing areas are not, under the Sharon Zoning Regulations, a permitted principal use in the Rural Residential zoning district, the question here is whether such usage is a permitted accessory use.
Article XI of the Sharon zoning regulation defines "accessory use or building" as "a use or building customarily incidental to and subordinate to the principal use or building, which is located on the same lot as the principal use or building, or on a contiguous lot under the same ownership." Thus, under the applicable zoning regulation, the critical issue for determining accessory usage is whether that usage is "customarily incidental to and subordinate to" the principal use. There is no real question that the proposed helicopter usage here would be subordinate to the principal uses of the property as residential. The board denied the zoning application here because it decided that helicopter usage was not "customary and/or regular accessory use in Sharon, Connecticut."
The question before the court, then, is whether there was substantial evidence in the record to support the board's decision that helicopter usage was not a customary usage in the rural residential zoning district. The leading case on construing the term "customary usage" is Lawrence v.Zoning Board of Appeals of North Branford, 158 Conn. 509, 512-513,264 A.2d 552 (1969), where the court stated:
 The word "customarily" is even more difficult to apply. Although it is used in this and many other ordinances as a modifier of "incidental," it should be applied as a separate and distinct test. Courts have often held that use of the word "customarily" CT Page 6237 places a duty on the board or court to determine whether it is usual to maintain the use in question in connection with the primary use of the land. . . . In examining the use in question, it is not enough to determine that it is incidental in the two meanings of that word as discussed above. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. As stated in 1 Rathkopf, Zoning Planning (3d Ed.), p. 23-4: "In situations where there is no . . . specific provision in the ordinance, the question is the extent to which the principal use as a matter of custom, carries with it an incidental use so that as a matter of law, in the absence of a complete prohibition of the claimed incidental use in the ordinance, it will be deemed that the legislative intent was to include it."
 In applying the test of custom, we feel that some of the factors which should be taken into consideration are the size of the lot in question, the nature of the primary use, the use made of the adjacent lots by neighbors and the economic structure of the area. As for the actual incidence of similar uses on other properties, geographical differences should be taken into account, and the use should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties.
In the present case, the zoning board of appeals found that "from a factual bases, a helicopter landing area has not been a habitually and by long practice established as reasonably associated with the primary use in a Rural Residential Zone." The board had no evidence to the contrary before it. Although James Sinclair did present testimonial and documentary evidence at the administrative hearing below as to the nature of the proposed usage and its frequency and occurrence outside the Town of Sharon, he offered no evidence whatsoever that helicopter usage was customary in the Rural Residential zone in the Town of Sharon. The only evidence that he offered of helicopter usage in residential zones pertained to communities other than Sharon.
"Whether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to be determined by it with a liberal discretion." (Internal quotation marks omitted.) Upjohn Co. v.Planning Zoning Commission, 224 Conn. 82 89, 616 A.2d 786 (1992). As CT Page 6238 the court noted in Lawrence, a decision whether a particular usage is "subordinate and customarily incidental to property located in the . . . town and used for residential purposes . . . is one peculiarly within the knowledge of the local board. Lawrence v. Zoning Board of Appeals, supra, 158 Conn. 514.
The plaintiffs do not claim that the Zoning Board of Appeals had before it sufficient evidence to establish helicopter usage was customary in the Sharon Rural Residential zone. The plaintiffs complain, however, that basing the decision solely on the custom of residential usage within the town of Sharon is unnecessarily parochial. They maintain that the proper legal standard is whether helicopter usage is today a customary accessory usage for rural residential properties in general, not just those located within Sharon. The heart of their argument on appeal is that "whether a helicopter landing area is an accessory use to a primary residential use should be determined by facts and practices existing beyond the geographical area of the Town of Sharon" (Plaintiffs' Brief in Support of Appeal, p. 14):
 One of the issues of first impression in this use is whether the "customary" quality of accessory use is to be evaluated based on the territorial limits of each of Connecticut's 169 towns, some of which are very small in population or in geographical area. . . . Such a view runs counter to the entire trend toward a global economy, where the world gets smaller with improved modes of transportation and communication. The use and development of improved transportation should not be obstructed by the kind of provincialism displayed by said Zoning Board of Appeals.
Id., 12.
The issue of whether the board applied the proper legal standard in assessing the appropriate area within which to determine customary usage is a legal question that the court must independently determine, without deference to the town zoning board's decision. If the court concludes that the zoning board of appeals applied the wrong legal standard, the court cannot itself then decide whether helicopter usage is customary by whatever other standard is appropriate. That decision, applying the correct legal standard, is still one for the defendant. The proper role for the court would be to sustain the plaintiffs' appeal and remand the case for further proceedings in which the board would be directed to apply a correct standard. See, e.g., Denby v. Commissioner, 6 Conn. App. 47, 57ff, 502 A.2d 954 (1986). If the board, on the other hand, applied the proper legal standard, there being no evidence at the administrative CT Page 6239 hearing as to customary usage in the Sharon Rural Residential zoning district, the plaintiffs would have failed to meet their burden of proof that the Board of Appeals acted illegally.
There does not appear to be any Connecticut authority expressly considering the question of what the proper zone or arena is for the purpose of deciding customary usage. In considering customary usage, courts have often looked to local custom.[2] In other instances, however, courts have either looked at the character of the primary usage itself or considered the proposed accessory usage outside the local community to determine customary usage for a particular parcel of land within a specific zoning district.[3]
From these cases may be gleaned the principle that, in assessing customary and accessory usage, the zoning board and reviewing court must look to the nature and character of the principal and proposed accessory usage to determine how broad or wide the appropriate "community" is for determining customary usage. For certain usages, one would not look solely to the local community to determine what is customary. Thus, the Sharon Planning and Zoning Commission, when presented in 1985 with a request for emergency helicopter usage as an accessory use at the local Sharon hospital, properly considered whether hospital helicopter usage was customary outside Sharon. The Commission was required to consider both the nature of a hospital, as well the services and activities inherent in a hospital that the Commission, in approving a hospital as an approved principal usage in a commercial zoning district, had originally intended. It then had to decide whether the newly proposed helicopter usage was a customary accessory usage for a hospital. Looking outside town boundaries to determine whether helicopters are reasonably associated with the principal usage of a hospital in a commercial zone does not dictate doing so in deciding customary usage for a rural residential zone.
For other usages, however, looking beyond the local zoning district or town to determine whether a particular usage was customary would destroy the standard. Having three dogs or maintaining a pig sty, for example, would each, in some zoning districts somewhere, be "customary"; the question in the cases considering those questions, however, was whether such usage was customary in the particular district in question.
As the Lawrence court directs, the necessary inquiry will always be whether a proposed accessory usage has commonly, habitually and by long practice been so reasonably associated with the primary use that it must be deemed that the legislature intended in enacting the zoning ordinance to include it. See Lawrence v. Zoning Board of Appeals of North Branford, supra, 158 Conn. 512. In assessing customary usage, the questions should CT Page 6240 be, bearing in mind the factors articulated in Lawrence: (1) What is the nature of the principal usage and the proposed accessory use? (2) In approving the principal usage, should the zoning commission necessarily be deemed to have intended to include the proposed accessory usage?[4]
In deciding here whether to approve the proposed heliport as an accessory usage in a rural residential district, the local zoning board properly looked at the history of usage within the Town of Sharon. For uses proposed as accessory to residential parcels, the appropriate standard is that zoning district within the particular town. The fact that another town somewhere else, such as the Town of Glastonbury, might approve helicopter usage as customary in its rural residential zones does not mean such usage has been customary in the Town of Sharon. The plaintiffs point to no reason as to why one should assume that the Planning and Zoning Commission, in adopting zoning regulations for the Town of Sharon, would necessarily have intended to include helicopter usage as an accessory use in a Rural Residential zone; nor did her husband introduce any such evidence at the administrative hearing below.
As the Lawrence case further points out, courts must tread lightly in rejecting the decisions of local boards as to what is or is not customary. These are decisions that are "peculiarly within the knowledge of the local board." Lawrence v. Zoning Board of Appeals of NorthBranford, supra, 158 Conn. 514. Here, the defendant zoning board of appeals, applying that particularized knowledge of its own community and with no evidence having been presented to demonstrate that helicopter usage was customary in Sharon rural residential zones, was within its rights to reject the proposed helicopter usage.
The plaintiffs argue that, although the zoning board may rely on its own knowledge, a zoning applicant must be "fairly apprised of the facts" on which the board will rely. See Parsons v. Board of Zoning Appeals,140 Conn. 290, 293, 99 A.2d 149 (1953), overruled on other grounds, Wardv. Zoning Board of Appeals, 153 Conn. 141, 146-47, 215 A.2d 104 (1965). The plaintiffs correctly state this rule of fundamental fairness in administrative proceedings; Grimes v. Conservation Commission of theTown of Litchfield, 243 Conn. 266, 273 n. 11, 703 A.2d 101 (1997); which requires that "[b]efore an administrative agency may lawfully rely on material nonrecord facts within its special knowledge and experience or which it has learned through investigation, it must allow party adversely affected thereby an opportunity to rebut at an appropriate stage in the proceedings." Connecticut Natural Gas Corporation v. Puca,183 Conn. 128, 139 n. 9, 439 A.2d 282 (1981).
Since the plaintiff Barbara Sinclair was not the applicant for the zoning permit, she cannot complain of any such failure. As for James CT Page 6241 Sinclair, however, there could be no claim here of not being "fairly apprised." There was ample notice that zoning officials had determined that helicopter usage was not customary in Sharon rural residential zones and sufficient opportunity to rebut that view. The reason stated for the initial denial of the zoning application was that "from a factual basis a helicopter landing area has not been a habitually and by long practice been established as reasonably associated with the primary use in a Rural Residential Zone." A letter from the zoning enforcement officer reporting the decision of the Planning and Zoning Commission to plaintiffs' attorney dated January 15, 1999, (Return of Record, No. 32), and the official minutes of that meeting reported the same reasoning. (Return of Record No. 33). It is perfectly clear from the record that the James Sinclair and his attorney were afforded full opportunity to present their case, were fully aware that a critical issue in the case was whether to assess the criteria of accessory usage from the sole perspective of Sharon custom, and were not denied the opportunity to introduce evidence as to historical usage and custom in Sharon.
In summary, the plaintiffs' appeal fails to meet its burden of proof as to accessory usage. The record amply demonstrates that the decision of the zoning board of appeals is supported by substantial evidence.
 B Special Exception Usage
The court will consider both special exception usage claims together. The plaintiffs argue that a private helicopter landing area constitutes an "outdoor recreational use" permitted by special exception under town regulations (Plaintiffs's Brief, p. 21). They further claim that the failure of the Planning and Zoning Commission to act of the requested special exception within sixty-five days after Mr. Sinclair submitted a site plan requires automatic approval of the special exception by operation of law. For the reasons stated below, the court rejects both claims.
Towns are not required by law to allow for special uses or exceptions. Instead, under General Statutes § 8-2, town zoning regulations "may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission." Section 8-7d of the General Statutes further provides various alternative methods by which a town may permit residents to seek special exceptions:
 in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning CT Page 6242 commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences.
Article VIII of the Sharon zoning regulations provides that "the Planning and Zoning Commission may approve an application to permit the establishment of one or more uses listed in this Section for which a Special Exception must be secured . . . ." (Emphasis added.) Among the alternative methods permitted by § 8-7d for seeking approval of a special exception usage, the Sharon zoning regulations thus require an "application" for a special exception. In this case, however, the plaintiff only applied for a zoning permit, rather than specifically for a special use permit. The application for a zoning permit merely requested a "finding" that the heliport was a permitted special usage, but that is neither the same as specifically applying for a special exception nor the sanctioned mode for seeking special exception in the Town of Sharon.
The plaintiffs point out that the application for a zoning permit appended a site plan "in accordance with Article VI [of the Sharon zoning regulations], which requires that `[a] site plan . . . shall accompany the application for any special exception.'" They correctly assert that under § 8-7d (b) of the General Statutes,[5] "where a site plan is an inseparable part of a special exception application, and the zoning commission fails to act within the Statutory . . . time limits for site plans, both the site plan and the appurtenant special exception are deemed granted." (Plaintiffs' Brief in Support of Appeal, p. 22.) See SSM Assoc. Ltd. Partnership v. Planning Zoning Commission,211 Conn. 331, 336, 559 A.2d 196 (1989).
Their argument does not aid their case, however. Although they filed a site plan, they never filed a formal application for a special exception usage. Thus, approval of their site plan was not "the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure," as is required under General Statutes §8-7d (b) for automatic approval by operation of law if the Commission does not hold a hearing within sixty-five days. In this case, just as inCenter Shops of East Granby, Inc. v. Planning Zoning Commission,253 Conn. 183, ___ A.2d ___ (2000), a site plan was neither integral to nor virtually indistinguishable from an application for a special use permit and, therefore, failure to approve the site plan within the statutorily-prescribed time does not require, by operation of law, CT Page 6243 approval of a special use permit. Here, the plaintiffs did not satisfy the principal requirement for such a permit, actually filing an application for special exception usage. As the Sharon zoning regulations do not require submission or approval of a site plan for regular zoning applications, as opposed to applications for special exceptions, the plaintiffs' site plan was not an "inseparable," legally required component of the application they did file.
Although the cases since SSM construing § 8-7d (b) have continued to apply the rule formulated by the court there, they have done so in strict adherence to the statutory language. Thus, in Gelinas v. WestHartford, 225 Conn. 575, 626 A.2d 259 (1993), a zoning applicant had already implemented most of the changes before seeking approval. The court pointed out that § 8-7d (b) contemplates automatic approval only of "proposed" uses:
 Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is to be rendered mere surplusage . . . . The use of the adjective "proposed" indicates that the legislature meant to distinguish planned structures, alterations or uses from structures, alterations or uses that have already been fully or significantly implemented. The use of the adjective "proposed" signifies that the building, use or structure involved in the application is forthcoming, as opposed to a building, use or structure that, as in this case, has already been significantly altered without the required building permits or zoning approvals. We are not persuaded that the legislature intended that 8-3 (g) and 8-7d (b) mandate automatic approval of site plan applications filed after building alterations and changes in uses have already been significantly implemented without the required building permits or zoning approval. Because the plaintiffs did not file a site plan application for "a proposed building, use or structure," we, therefore, agree with the trial court and conclude that the town's failure to render a decision on the plaintiffs' site plan application within the prescribed time limits did not result in an automatic approval of the application pursuant to 8-3
(g) and 8-7d.
(Internal quotation marks omitted.) Id., 584. CT Page 6244
Thus, the Commission here properly declined to rule on the request for the finding, that not being the appropriate application for a special exception. Hence, there was no "automatic approval" of the request, as urged by the plaintiffs. Further, the zoning board of appeals properly declined to consider the special exception issue, as no application for one had been presented or decided below by the Commission.
 C Supplemental Claims
The final question the parties have briefed is whether the plaintiffs already have a right to conduct 36 helicopter takeoffs and 36 landings each year. The question as to 36 takeoffs or 36 landings annually is not a case or controversy that local zoning officials have considered in the context of an existing controversy. There is no case presently before the court presenting such an issue as a matter of appeal. It is not the function of the court to render legal conclusions on issues not properly before the court. "[T]he courts are without the jurisdiction to issue advisory opinions." Scinto v. Sosin, 51 Conn. App. 222, 244, 721 A.2d 552
(1998). "It is not our function to render opinions which are simply advisory." Pellegrino v. O'Neill, 193 Conn. 670, 683, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S.Ct. 236, 83 L.Ed.2d 176 (1984). In zoning matters, the Superior Court hears appeals of decisions issued by local zoning authorities. Should there be future enforcement action on which parties take an appeal, that would be the occasion for a court to rule on this issue, but not now.[6]
Accordingly, the plaintiffs' appeal is dismissed.
SO ORDERED.
BY THE COURT
Frazzini, J.