[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 8, 2001, the applicant/appellant, 200 Associates, LLC applied to the respondent, Town of Thompson, Planning Zoning Commission (hereinafter referred to as PZC) for approval of a 31 Lot subdivision on 56.65 acres, to be known as, the Quail Ridge subdivision.
On December 17, 2001, the PZC held a public hearing and subsequently denied the application for the following reasons: (Exhibit U, Page 5 of 9):
1. The proposed new road is a cul de sac and exceeds 1000' feet;
2. There is no available Department of Transportation approval;
3. No approval from Water Pollution Control Authority; and
4. The proposed road exceeds the length of Thatcher Road;
5. The Commission does not accept the open space area; and
6. Concerns with the proposed drainage.
 Oral argument on the appeal was presented to the court on January 15, 2003.
The court has heard testimony to support the standing of the applicant/appellant on the appeal from Edward Brewer of Pomfret, Ct. an owner of the land which is the subject of this sub-division application. Further, both parties agreed that statutory aggrievement exists for this appeal. General Statutes § 8-8 (a). Caltabiano v.Planning and Zoning Commission, 211 Conn. 662 (1989). Therefore, aggrievement is found.
The plaintiff challenges the decision of the PZC to deny the CT Page 1103 subdivision application, which essentially relates to whether this proposed subdivision constitutes a cul-de-sac. The parties agree that the Town of Thompson subdivision regulations (Second Edition June 1, 1991, Exhibit FF) do not define the term "cul-de-sac" and the Commission Chairman, Charles Paquette, admits there is no clear definition (Exhibit CC, Page 19).
In reviewing this decision the court must assess whether the PZC properly determined "whether [an] applicant's proposed use is one [that] satisfies the standards set forth in the . . . regulations and statutes. . . ." (Citations omitted; internal quotation marks omitted.) Kaufman v.Zoning Commission, 232 Conn. 122, 150 (1995). When a PZC denies an application and gives reasons for its action, the question on appeal to the Superior Court is whether the evidence in the record reasonably supports the agency's action. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Citations omitted.) Whittakerv. Zoning Board of Appeals, 179 Conn. 650, 654 (1980). However, a municipal planning commission in exercising its function of approving or disapproving any particular subdivision plan is acting in administrative capacity. Reed v. Planning and Zoning Com'n of Town of Chester,208 Conn. 431 (1988). The PZC has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. Langbein v. Planning Board, 145 Conn. 674, 679 (1958). If it does not conform as required, the plan may be disapproved. ForestConstruction Co. v. Planning and Zoning Commission, 155 Conn. 669,674-75, (1967).
The trial court cannot reverse an agency's decision on factual findings if there is substantial evidence in the record to support the agency's findings and conclusions. Samperi v. Inland Wetlands Agency. 226 Conn. 579
(1994); Fraenza v. Keeney, 43 Conn. Sup. 386 (1994), aff'd, 232 Conn. 401
(1995) (per curiam). The planning and zoning commission should be sustained if even one of the stated reasons is sufficient to support its decision. Property Group v. Planning and Zoning Commission, 226 Conn. 684,697 (1993) Huck v. Inland Wetlands and Watercourses Commission,203 Conn. 525, 540 (1987).
The proposed subdivision was to be located off Thatcher Road in the Town of Thompson in an R-40 zoning district, and called for 3,165 feet of new road (See Exhibit A Application). The Application was duly noticed for a Public Hearing to be held on December 17, 2001.
1. Definition of "cul-de-sac": CT Page 1104
At the public hearing, one of the key issues raised, and the principle issue raised and argued on appeal, was whether or not the proposed road constituted a "cul-de-sac." As earlier indicated, the subdivision regulations do not define cul-de-sac and both parties argue that the term should be given its common and ordinary meaning.
It was the position of the applicant/appellant that the proposed road included two intersections and no turn-around and therefore did not constitute a cul de sac. The applicant/appellant submitted a document entitled "Definitions of Surveying and Associated Terms" to the Commission at the public hearing. The definition contained in this reference for a cul de sac street, was: "A dead-end street which widenssufficiently at the end to permit an automobile to make a U-turn." (RO R, Item K, Definition of Surveying and Associated Terms, "Prepared by a Joint Committee of the AMERICAN CONGRESS ON SURVEYING and the AMERICAN SOCIETY OF CIVIL ENGINEERS, 1978 rev.")
The Chairman of the Planning and Zoning Commission, Mr. Charles Paquette, indicated a cul de sac is a street with only one opening and that the proposed road constituted a cul de sac. The primary reason for denying the application centered on whether or not the proposed road through the subdivision, tentatively called Elizabeth Circle, constitutes a cul-de-sac. This court concludes that Elizabeth Circle, so-called, is not a cul-de-sac within the common and ordinary usage of the term.
To draw a verbal picture of cul-de-sac as that term is normally understood one could adopt the definition of the civil engineers and surveyors as set forth before. Similarly, a review of both standard dictionaries and Black's Law Dictionary are useful in interpreting words in accordance with their natural use and meaning. Schwartz v. Planningand Zoning Commission of the Town of Hamden, 208 Conn. 146, 153, (1988).
Black's Law Dictionary, 4th Edition, describes a cul de sac as "a blind alley; a street which is open at one end only . . ." (Citation omitted). Webster's Ninth Collegiate Dictionary defines the term cul-de-sac as "1. a blind diverticulum or pouch 2: a street closed at one end." The Random House Dictionary of the English Language 1973 Edition, defines the term cul-de-sac as "1. sac-like cavity, tube, or the like, open only at one end, as the caecum. 2. a street, lane, etc., closed at one end; blind alley . . ." These definitions suggest a road that is generally configured like a laboratory test-tube, long, slender and ending in a pouch or bulb. Within the common understanding of a cul-de-sac, one would be required to go to the end of the road, turn around and traverse back directly along the line of entry, thus a dead-end or blind alley. CT Page 1105
The proposed road in this subdivision is unlike the classic definition or description of a cul-de-sac. While the proposed road does have but one point of entry and exit, the road is configured some 3,000 feet long consisting primarily of a large circular drive in the fashion of a large "P" or, as described by counsel, a large lollipop. The proposal is clearly not a dead-end street that widens sufficiently at the end to permit an automobile to make a "U" turn. No person entering or departing from Elizabeth Circle would be required to make a "U" turn.
The Commission argues that LePage Homes, Inc v. Planning and ZoningCommission of the Town of Southington, 74 Conn. App. ___ (Dec. 31, 2002) is controlling. This court finds the case to be inapposite in that the court in the LePage case was dealing with the reasonable discretion of a zoning commission to construe its own defined regulations. The term cul-de-sac was defined by the Southington zoning regulations. Here the term was not defined and the definition placed upon the term by the Commission was not the normal and usual definition.
2. Department of Transportation (DOT) approval:
The Subdivision regulations (Exhibit FF, Page 11) provides that the application must include evidence that the plans were submitted for DOT review. The applicant/appellant complied with this regulation. Exhibit H. The regulations state that Commission approval shall be conditioned upon presentation of a permit for any proposed street or storm water drainage system which joins with a state highway. (Exhibit FF, Page 14-15). Exhibit I is a letter from the applicant's engineer to the Department of Transportation adding storm water filtration ditches and a vegetation right of way on the plans as discussed with the Department of Transportation. The DOT process is to review the plans and issue a permit to the contractor when a bond is posted after subdivision approval is obtained. There is no requirement under the Thompson Subdivision Regulations that The Department of Transportation approval is required as a prerequisite to subdivision approval.
3. Approval from the Water Pollution Control Authority (WPCA):
Water Pollution Control Authority approval is not required in the Town of Thompson as a prerequisite to subdivision approval. A sanitary report is required by the Commission for subdivisions when on-site sewage disposal systems are proposed (XIV Water Supply and SanitaryRequirements § B, p. 56) In this case where sewer hook-ups are provided, the sewer authority reviews the sewer system as a prerequisite to acceptance of the system as a public sewer system. Exhibit G is a CT Page 1106 letter from the applicant's engineer to the Town Building Official stating that WPCA had turned over authority to review and approve plans to the Building Official. The applicant/appellant represents that no comment was ever received from the Building Official. The applicant complied with the subdivision regulations.
4. The proposed road exceeds the length of Thatcher Road:
The proposed subdivision is off of an existing road known as Thatcher Road. While the commission chairman expressed some concerns at the public hearing, neither he nor counsel in the brief was able to point to any violation of Thompson zoning regulations to support this basis for denial of the application.
5. The Commission failed to designate the open space area;
The subdivision regulations require that one acre be set aside for open space for every five proposed lots (See Exhibit FF, Page 27, Section VII.) It is undisputed that the amount of open space proposed on the plans for this subdivision consists of 13.4 acres of land. This. acreage greatly exceeds the subdivision regulation requirement of 6.2 acres. After the public hearing on December 17, 2001, the Commission discussed the fact that open space can be accepted in any form it chooses (See Exhibit CC, Page 16). "The land so reserved shall be chosen by the Commission for the purpose of conserving natural or scenic resources; protecting cultural, historic or archeological resources, . . ." The Commission did not exercise its regulatory authority to designate the open space, it merely rejected the application. This is an unlawful and arbitrary application of its power.
6. Concerns with the proposed drainage;
The applicant submitted complex storm water run off control calculations with its application prepared by its engineer. (Exhibit N.) The Commission did not have any other expert evidence before it to contradict the calculations, nor did they challenge or express any concerns with respect to location, design or water run off. The only concern expressed in the record related to the following dialogue:
Question — John Rice, "It's going to be the Town's responsibility to maintain that then?"
Answer — Janet Blanchette, "That's correct it's part of the open space . . ." (Return of the Record, December 17, Public Hearing, Item CC, Page 11.) CT Page 1107
The subdivision regulations require in part, "The size and the location of all detention basins shall be within the ability of the Town to appropriately maintain, repair or modify as determined by the Commission." ("Detention Basins", § 6 p. 35). The Commission did not indicate how the proposed subdivision failed to comply with the regulations nor is there anything in the record to support the Commission's rejection.
 CONCLUSION:
The record of this case does not support the Commission's denial of the application. The subdivision plans as submitted appear to comply with the subdivision regulations. Unlike other planning and zoning functions, there is no discretion to deny the application when there is compliance with the subdivision regulations. Accordingly, the appeal is sustained. Judgement may enter accordingly,
___________________ Foley, J CT Page 1108